## No. 28488

**R & F Enterprises, Inc., a Colorado corporation, d/b/a Mile High Health Studio v. The Board of County Commissioners of Adams County, State of Colorado**

(606 P.2d 64)

Decided February 4, 1980.                    Rehearing denied February 25, 1980.

138

Stanley H. Marks, Jonathan L. Olom, for plaintiff-appellant.

S. Morris Lubow, County Attorney, John E. Bush, Jr., Assistant, for defendant-appellee.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

On November 28, 1977, plaintiff-appellant, R & F Enterprises, Inc., was issued a license by the Adams County Board of Commissioners to operate a massage parlor. On December 1, 1977, an employee of the massage parlor was arrested on the premises and charged with committing an act of prostitution in violation of section 18-7-201, C.R.S. 1973. The Board immediately issued an order to appellant to appear before the Board and show cause why, after this incident, its license should not be revoked.

In February 1978, after an evidentiary hearing, the Board revoked appellant's license pursuant to section 12-48.5-108, C.R.S. 1973 (1978 Repl. Vol. 5), finding that:

"1.  All of the essential allegations and facts contained in said report of the Adams County Sheriff's Department are true.

"2.  Knowledge of the actions of the employees of the licensee is imputed to the manager and to the licensee.

"3.  The licensee, through its officers and managers, is responsible for all conduct occurring on the licensed premises.

"4.  The licensed corporation, its officers, managers, and employees are not, with respect to their character, record, and reputation, satisfactory to this Board of County Commissioners."

Appellant appealed this ruling to the district court, which affirmed the revocation of the massage parlor license. The court held that the evidence presented at the license revocation hearing was competent to support a finding that acts of prostitution had, in fact, taken place; that such acts are imputed to the employer; and that the language of the licensing statute, section 12-48.5-108, C.R.S. 1973 (1978 Repl. Vol. 5), is not so vague as to constitute a denial of procedural due process.

We affirm the district court.

Appellant argues that the language of section 12-48.5-108(1)(c) and (e), C.R.S. 1973 (1978 Repl. Vol. 5), is unconstitutionally vague and results in deprivation of property without due process of law. The statute reads in pertinent part:

"(1)   No license provided by this article shall be issued to or *held* by:

. . . .

"(c) Any person employing, assisted by, or financed in whole or in part by any other person who is not of *good character and reputation* satisfactory to the local licensing authority;

. . . .

"(e) Any person unless he is, with respect to his *character, record, and reputation,* satisfactory to the local licensing authority." (Emphasis added.)

Appellant contends that the terms "character," "reputation," and "record" are vague and uncertain of meaning, requiring speculation as to the standard of conduct required by the licensing board.[1]

We note initially that the General Assembly enacted the Massage Parlor Code as an exercise of the police power for the protection of the economic and social welfare and the health, welfare and safety of the people of the state, and that the licensing and regulation of massage parlors are matters of statewide concern. Section 12-48.5-102, C.R.S. 1973 (1978 Repl. Vol. 5). It is fundamental that such legislation is entitled to a presumption of constitutionality and that the burden is upon the person alleging invalidity to prove it beyond a reasonable doubt. *People v. Gym of America,* 177 Colo. 97, 493 P.2d 660 (1972). When the alleged unconstitutionality is based upon the doctrine of vagueness, the court has a duty to construe the statute in such a way that it is not void for vagueness whenever a reasonable and practical construction can be given to its language. Further, one must read and consider the statute as a whole so as to ascertain the intent of the General Assembly in passing it, *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972), and the words and phrases used are to be considered in their generally accepted meaning, *Humana, Inc. v. Bd. of Adjustment,* 189 Colo. 79, 537 P.2d 741 (1975).

As to the word "reputation," this court, in *LDS, Inc. v. Healy,* 197 Colo. 19, 589 P.2d 490 (1979), held this term was unconstitutionally vague and could not suffice as a standard of conduct since it connotes merely an "opinion of the community." We do not, however, reach the same conclusion regarding the statutory phrase "good character" or "record."

A reading of the Massage Parlor Code, together with section 24-5-101, C.R.S. 1973, which is applicable to any state and local licensing agency, reveals that, in view of the expressed public necessity that massage parlors be licensed and regulated, the primary legislative concern is that the licensee and his employees shall be persons of good moral character, fit to conduct the business in accordance with the regulations imposed by

---

[1] Appellant challenges the constitutionality of section 12-48.5-108(1)(c) but does not specifically mention the term "good character" in his argument. We note that paragraphs (1)(a) and (b) use the term "good moral character."

the statute or enacted by the licensing authority pursuant to section 12-48.5-118.[2] We are guided by the provisions of section 12-48.5-105 of the code, which requires an investigation by the licensing authority of the fitness of the applicant to conduct such business:

". . . In investigating the fitness of any applicant, licensee, or employee or agent of the licensee or applicant, the local licensing authority may have access to *criminal history record* information furnished by criminal justice agencies subject to any restrictions imposed by such agencies. In the event the local licensing authority takes into consideration information concerning the applicant's *criminal history record,* the local licensing authority shall also consider any information provided by the applicant regarding such *criminal history record,* including but not limited to evidence of rehabilitation, character references, and educational achievements, especially those items pertaining to the period of time between the applicant's last criminal conviction and the consideration of his application for a license." Section 12-48.5-105(2)(a), C.R.S. 1973. (Emphasis added.) The foregoing language of the code parallels the mandate of section 24-5-101, C.R.S. 1973, which serves as a standard of conduct for all state and local licensing agencies and provides:

". . . Whenever any state or local agency is required to make a finding that an applicant for a license, certification, permit, or registration is a person of *good moral character* as a condition to the issuance thereof, the fact that such applicant has, at some time prior thereto, been convicted of a *felony or other offense involving moral turpitude,* and pertinent circumstances connected with such conviction, shall be given consideration in determining whether, in fact, the applicant is a person of *good moral character* at the time of the application. The intent of this section is to expand employment opportunities for persons who, notwithstanding that fact of conviction of an offense, have been rehabilitated and are ready to accept the responsibilities of a law-abiding and productive member of society . . . ." (Emphasis added.)[3] Thus it is clear that the meaning of "good

---

[2] Here, the Board of County Commissioners apparently had not enacted more stringent standards for licensing, as it might have done pursuant to this section of the code.

[3] As heretofore noted, the Massage Parlor Code uses the term "good moral character" in section 12-48.5-108(1)(a) and (b).

The requirement that an applicant for or a holder of a license be of "good character" or "good moral character" is found in many of the licensing statutes in this state. *See, e.g.,* sections 12-25-110 (professional engineer); 12-31-106(1)(b) (child health associate); 12-32-105 (podiatrist); 12-33-112 (chiropractor); 12-35-113(1)(c) (dentist); 12-39-106(1) (nursing home administrator); 12-41-108(1)(a) and (2)(a) (physical therapist); 12-46-108(1)(b) (Manufacturing and sale of fermented beverages); 12-51.5-103(3)(n) (mobile home licensee); and 35-59-106 (animal disposal plant licensee).

It is thus clear from the statutory scheme that, where the General Assembly has enacted licensing acts under the police power regulating professions or businesses affected with the public interest, and has used the terms "good moral character" or "good character" interchangeably as a standard of fitness to hold a license, the General Assembly intended that licensing be restricted to law-abiding citizens.

moral character,'' ''good character,'' or ''character'' includes the applicant's, or his employees', propensities toward criminal conduct and criminal record, if any, taking into account such record as ameliorated by any rehabilitation. As a further guide to the licensing agents,the criminal conduct referred to in section 24-5-101 is limited to felonies or other offenses involving moral turpitude.

■ It is also apparent that the term "record," as used in the Massage Parlor Code, refers to the criminal record of the applicant, or that of his employee when determining the "good character" of the employee.

■ In our view, men of common intelligence have no need to guess at the meaning of the challenged language used in the statute. *People v. Gym of America, supra.* We hold that the standard of conduct is sufficiently defined to provide adequate notice to license applicants and their employees. This is particularly so when, as in this case, there is no issue relating to the denial of First Amendment freedoms. We noted in *Weissman v. Bd. of Ed.*, 190 Colo. 414, 547 P.2d 1267 (1976):

". . .'[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.' *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). . . ."

■ We recognize that the drafters of the legislation with which we are here concerned might have more completely spelled out the detail of the criteria embodied in the statute for the issuance and the revocation of licenses issued thereunder. However, as noted in *Weissman v. Bd. of Ed., supra,*

". . . [T]otal precision of expression is elusive and has never been demanded of the legislature. . . .

. . . .

"". . . The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing . . . statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.' *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584."

We do not therefore hold the questioned terms of the statute to be vague for the reason that they might have been more fully delineated.

■ Here, the employee admittedly engaged in an act of prostitution in violation of section 18-7-201, C.R.S. 1973, which we hold to be an offense involving moral turpitude. *See generally* Annot. 23 A.L.R. Fed. 480, 565 (1975). Since section 12-48.5-108(1)(c) prohibits a license from being held by any person employing any other person who is not of "good

character . . . satisfactory to the local licensing authority," it was within the authority of appellee Board of County Commissioners to revoke appellant's license. We conclude that appellant was not denied his property without due process of law.

We therefore affirm the judgment.

JUSTICE ERICKSON dissents.