The **LIQUOR AND BEER LICENSING ADVISORY BOARD OF the CITY OF COLORADO SPRINGS, Colorado, the City Council of the City of Colorado Springs, and the City of Colorado Springs, Appellants,**

v.

**CINCO, INC., a Colorado corporation, d/b/a the Candlelight Inn, Appellee.**

No. 86SA482.

Supreme Court of Colorado,
En Banc.

March 20, 1989.

.James G. Colvin II, City Atty., Michael J. Heydt, Chief Litigation Atty., Stacy L. Schulte, Asst. Senior Pros. Atty., Colorado Springs, for appellants.

Stephen J. Sletta, P.C., Mary Kay Larue, Colorado Springs, for appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Steven M. Bush, Asst. Atty. Gen., Denver, for amicus curiae, Colorado Dept. of Revenue.

KIRSHBAUM, Justice.

Appellants, the City of Colorado Springs (the City), the City's Liquor and Beer Li-

---

censing Advisory Board (the Board), and the City Council of Colorado Springs (the Council) seek review of the district court's judgment reversing the Council's denial of an application by Cinco, Inc., d/b/a The Candelight Inn (Cinco), to renew a tavern liquor license. The district court held that the City's failure to adopt specific standards to be applied by the local licensing authority[1] in evaluating applications for renewal of liquor licenses constituted a violation of Cinco's constitutionally protected right to procedural due process of law. We reverse and remand with directions.

### I

On October 17, 1985, Cinco, a Colorado corporation, filed an application with the City to renew a tavern liquor license previously granted to it by the City. On November 22, 1985, the City sent Cinco a combined notice of hearing and order to show cause. This document informed Cinco that the Board would conduct a hearing to consider the application; that at the hearing the Board would consider "whether good cause exists to refuse to renew" the license; that at the hearing evidence supporting the alleged good cause for nonrenewal would be presented, subject to explanations or evidence in mitigation thereof; that the Board had authority to issue subpoenas; and that the proceedings would be "governed by the Local Licensing Authority, City of Colorado Springs, Colorado Rules of Procedure."[2] The document also described the administrative remedies

available to Cinco in the event the Board denied its application.

On February 7, 1986, the Board conducted a hearing. The evidence at the hearing revealed that Cinco had adopted a policy prohibiting its dancers from sitting at tables with patrons unless the patron purchased a drink for the dancer; that the proceeds from each such sale were to be divided equally between Cinco and the dancer; and that on thirteen separate occasions between July 11 and September 4, 1985, four undercover police officers were asked by dancers at Cinco's tavern to purchase house drinks for the dancers. At the conclusion of the hearing, the Board voted unanimously to recommend that the application not be renewed, concluding that Cinco had violated section 12–47–128(5)(1), 5 C.R.S. (1985).

Pursuant to section 9–2–304 of the Code of the City of Colorado Springs (1980) (the City Code), Cinco requested the Council to review the recommendation of the Board. On April 22, 1986, the Council voted to affirm the Board's recommendation.

On April 23, 1986, Cinco filed a review proceeding in the district court pursuant to C.R.C.P. 106(a)(4). The complaint, captioned "Complaint Pursuant to Rule 106," requested the district court to set aside the Council's decision and to stay the effect thereof.[3] The complaint alleged that the findings and recommendations of the Board, the Council and the City were not supported by substantial evidence and that the actions of the defendants were arbi-

---

1. Pursuant to §§ 9–2–205 and –301 of the City Code, the Board acts as the local licensing authority and its recommendations become final agency action unless appealed to the Council within ten days from the date of the recommendation. In the event an appeal is filed, the Council becomes the local licensing authority.

2. The document contained the following descriptions of allegations of improper conduct to be considered at the hearing:
   1. The licensee failed to report a change in managers which occurred on or about June 21, 1985, within thirty (30) days after such change occurred, in violation of § 12–47–106.9, C.R.S.1973, as amended;
   2. That from January 1, 1984 to December 31, 1984, the licensee purchased in excess of

one hundred dollars worth of malt, vinous and/or spiritous liquor from retail liquor stores in violation of § 12–47–119.5(2), C.R.S. 1973, as amended;
   3. That on approximately seventeen (17) occasions from July 11, 1985 to September 4, 1985, undercover Police Officers from the City of Colorado Springs Police Department were solicited by employees of the licensee for the purpose of purchasing an alcoholic beverage or other thing of value for such employee or for any other employee, in violation of § 12–47–128(5)(1), C.R.S.1973, as amended and Reg. 47–128.9.

3. The district court initially granted Cinco's request for a stay.

trary and capricious. The complaint also contained the following pertinent allegations:

6. Pursuant to the provisions of C.R. C.P. 106, the Plaintiff is hereby entitled to bring this action for judicial review of the actions of the Defendants.

. . . .

10. The ordinances and applicable statutes relied upon by the Defendants for non-renewal of the Plaintiff's liquor license fails [sic] to provide any distinction between the procedures for suspension of a license, revocation of a license, or non-renewal of a license for various violations.

11. The choice of sanctions (suspension, non-renewal, or revocation) was an arbitrary choice of the Defendant without rational or reasonable basis and therefore constitutes an unconstitutional delegation of power.

12. The procedure for suspension, non-renewal, and revocation failed to provide equal [protection] of the law to [Cinco] and other licensee[s] similarly situated.

13. The ordinance, suit, and regulations concerned are unconstitutional[ly] vague and uncertain as to the violations which may result in suspension, renewal, or revocation.

The City's answer, filed May 5, 1986, contained the following assertion: "The review of the Court in a Rule 106(a)(4) certiorari review proceeding is extremely limited in that the Court must affirm the decision of the City Council unless there is no competent evidence in the record to support that decision."

On October 14, 1986, the district court entered an order reversing the Council's decision on the ground that the ordinance and statutes governing that decision violated constitutional standards prohibiting delegation of legislative authority. The court first determined that it had jurisdiction to determine that constitutional issue in a C.R.C.P. 106(a)(4) review proceeding, distinguishing the decision of *Price Haskel v. Denver Department of Excise and Licenses*, 694 P.2d 364 (Colo.App.1984), on the ground that, unlike the circumstances of *Haskel*, Cinco's delegation of authority challenge was an " 'as applied' " challenge and not a " 'facial' " challenge.[4] Relying on *Cottrell v. City and County of Denver*, 636 P.2d 703 (Colo.1981), the district court determined that both the Liquor Code, §§ 12–47–101 to –143, 5 C.R.S. (1985), and the City Code contemplated the promulgation of rules and regulations defining "rational distinctions between alleged violations which might result in revocation or non-renewal as opposed to those which might result in suspension." The district court then determined that the absence of such standards rendered the review provisions established by the City Code meaningless. The district court concluded that the City Code and the Liquor Code constituted unconstitutional delegations of legislative authority.

The City, the Board and the Council have appealed. They assert initially that the district court erred in declaring the City Code and the Liquor Code unconstitutional in this proceeding. They argue in the alternative that the City Code and the Liquor Code do not violate constitutional prohibitions against the delegation of legislative authority.

## II

The district court's order addressed Cinco's assertion that the City Code and the Liquor Code constituted a constitutionally impermissible delegation of legislative authority.[5] The appellants urge that in the circumstances of this case the district court erred in considering Cinco's delegation of

---

**4.** The record does not contain the trial briefs of the parties. As a result, we are unable to ascertain the precise positions taken by the parties at trial with regard to this issue. However, the appellants' motion for reconsideration "reassert[s]" the argument that the constitutional challenge to the ordinance and statutes addressed by the district court may be raised only by means of a declaratory judgment action and not in the course of a C.R.C.P. 106(a)(4) proceeding.

**5.** The district court expressly declined to address other issues raised by the complaint.

legislative authority argument. We agree. In our view, Cinco's arguments with respect to this issue in reality challenge the sufficiency and validity of legislative acts of the Council and of the General Assembly and are not appropriate in review proceedings filed solely pursuant to C.R.C.P. 106(a)(4).

Cinco asserted that the Liquor Code and the City Code lacked sufficient guidelines to enable applicants seeking renewals of liquor licenses to determine what standards the Board and the Council would apply to their applications. Acceptance of this argument would require a declaration that the City Code as adopted is invalid not only as to Cinco but to any license renewal applicant. The review proceedings authorized by C.R.C.P. 106(a)(4) are designed to provide relief from quasi-judicial conduct, not from legislative acts. *See, e.g., Cherry Hills Resort v. Cherry Hills Village,* 757 P.2d 622, 625–28 (Colo.1988); *Two G's Inc. v. Kalbin,* 666 P.2d 129, 133–34 (Colo.1983); *City & County of Denver v. Eggert,* 647 P.2d 216, 220–21 (Colo.1982). Cinco's argument that it sought a declaration that the Code violated constitutional standards only "as applied," even if accepted, is not dispositive of the City's objection that the argument in essence questions the City's exercise of its legislative authority. The promulgation of the City Code and decisions to adopt or to refrain from adopting particular criteria are legislative, not quasi-judicial decisions.

Insofar as Cinco argues that the City Code and the Liquor Code constitute an impermissible delegation of legislative authority, it in reality requests a declaration that the Council and the General Assembly have exercised legislative authority in a constitutionally prohibited manner.[6] These assertions are indistinguishable from the constitutional challenges raised in *Price Haskel v. Denver Department of Excise and Licenses,* 694 P.2d 364 (Colo.App. 1984). The plaintiff in *Haskel* argued that the Colorado Liquor Code was unconstitutionally vague and constituted an unconstitutional delegation of legislative authority. The Court of Appeals determined that these challenges were "facial," concerned a general rule of policy applicable to an open class of individuals, and, as such, were legislative acts subject to review under C.R.C.P. 57 rather than C.R.C.P. 106(a)(4). *Id.* at 366.

This court has repeatedly held that constitutional challenges to legislative acts of governmental authorities may be raised by pleadings requesting the entry of a declaratory judgment pursuant to the provisions of C.R.C.P. 57 and section 13–51–101, 6A C.R.S. (1987). *Bonacci v. City of Aurora,* 642 P.2d 4, 6–7 (Colo.1982); *Tri–State Generation & Transmission Co. v. City of Thornton,* 647 P.2d 670, 676–77 n. 7 (Colo. 1982); *Collopy v. Wildlife Comm'n,* 625 P.2d 994, 1004 (Colo.1981). Requests for declaratory relief presuppose the existence of a trial forum rather than a review proceeding; the evidence which may be considered to justify or to preclude the grant of declaratory relief is not limited by the record made during prior administrative proceedings. *See Grant v. District Court,* 635 P.2d 201, 202 (Colo.1981); *Norby v.*

---

**6.** The district court based its resolution of the delegation of legislative authority issue upon our decision in *Cottrell v. City and County of Denver,* 636 P.2d 703, 709 (Colo.1981). In *Cottrell,* as in this case, the plaintiff challenged the validity of city charter provisions on the ground that they constituted an impermissible delegation of legislative authority. In part II(A) of *Cottrell,* we delineated the test to be applied when legislation designed to establish broad administrative authority to execute general legislative policy is challenged on the ground that the legislation effects an improper delegation of legislative authority. Such a determination requires consideration of due process concepts: whether the legislation contains sufficient statutory standards and safeguards, in combination with administrative standards and safeguards, to protect against unnecessary and uncontrolled exercise of discretionary power. We then applied that test, concluding that "the charter amendments are not unconstitutional on their face." *Id.* at 710.

*Cottrell* thus recognizes that a judicial conclusion that particular legislation constitutes an impermissible delegation of legislative authority necessarily invalidates the challenged legislation in all its applications. Persons seeking such a determination question the very structure of the legislation itself, not its application to particular circumstances.

*City of Boulder*, 195 Colo. 231, 236, 577 P.2d 277, 280–81 (1978); *Ford Leasing Dev. Co. v. Board of County Comm'rs*, 186 Colo. 418, 425–26, 528 P.2d 237, 240–41 (1974); *Regennitter v. Fowler*, 132 Colo. 489, 493–94, 290 P.2d 223, 225 (1955). Conversely, this court has also recognized that the provisions of C.R.C.P. 106(a)(4) are designed to permit review of quasi-judicial governmental conduct only and do not authorize review of legislative governmental acts. *Tri–State Generation*, 647 P.2d at 676–77; *Collopy*, 625 P.2d at 1004. The scope of a C.R.C.P. 106(a)(4) judicial review proceeding is limited to appellate review of the record, and the standards to be applied by the district court in evaluating the challenged conduct are few and well-defined.[7]

Parties may, of course, elect to combine a request for declaratory relief pursuant to C.R.C.P. 57 with a request for judicial review of quasi-judicial governmental conduct pursuant to C.R.C.P. 106(a)(4). *Kalbin*, 666 P.2d at 133–34; *Grant*, 635 P.2d at 202. We have also recognized that a complaint requesting injunctive relief need not be dismissed for failure to state a claim when the allegations contained therein establish that the plaintiff may be entitled to the relief authorized by C.R.C.P. 106(a)(4) and the plaintiff elects to seek the remedy provided by that rule. *Regennitter*, 132 Colo. at 493–94, 290 P.2d at 225. In this case, Cinco's "Complaint Pursuant to Rule 106" does not request declaratory relief pursuant to C.R.C.P. 57. *Compare Tisdel v. Board of County Comm'rs*, 621 P.2d 1357 (Colo.1980) (complaint caption requested declaratory judgment and plaintiff asked for such relief at close of trial). Paragraph 6 thereof expressly states that the complaint was filed pursuant to C.R.C.P. 106. Although put on notice by the answer of the appellants' position that declaratory relief was not available in this proceeding, Cinco at no time attempted to amend its complaint to incorporate the provisions of C.R.C.P. 57. *Compare Tihonovich v. Williams*, 196 Colo. 144, 582 P.2d 1051 (1978) (court did not err in grant-

ing motion to amend pleadings to conform to evidence). It continued to assert that it is entitled to challenge the City Code and the Liquor Code "as applied" in this C.R.C.P. 106(a)(4) review proceeding. However, as we have indicated, Cinco's challenge to the validity of the City Code and the Liquor Code is in reality a challenge to the legislation itself and the governmental legislative conduct that produced it. Such a challenge is not available in proceedings to review quasi-judicial governmental acts pursuant to C.R.C.P. 106(a)(4).

The district court erred in the context of this proceeding in addressing Cinco's argument, over appellants' objection, that the City Code and the Liquor Code constituted a constitutionally impermissible delegation of legislative authority. We therefore reverse the district court's judgment.

### III

The judgment of the district court is reversed and the case is remanded for further proceedings.

---

**7.** The rule itself authorizes the district court to set aside a decision of a governmental tribunal only if the tribunal "has exceeded its jurisdic-

tion or abused its discretion, and there is no plain, speedy and adequate remedy." C.R.C.P. 106(a)(4).