SQUIRE RESTAURANT AND LOUNGE, INC., a Colorado corporation, Plaintiff–Appellant,

v.

The CITY AND COUNTY OF DENVER; The Department of Excise and Licenses of the City and County of Denver; Mary A. Sylvester, in her capacity as the Director of Excise and Licenses for the City and County of Denver; and The Department of Revenue for the State of Colorado, Defendants–Appellees.

No. 93CA0541.

Colorado Court of Appeals, Div. I.

July 14, 1994.

As Modified on Denial of Rehearing Aug. 11, 1994.*

Certiorari Denied March 6, 1995.

Irving P. Andrews, John V. Stege, Denver, for plaintiff-appellant.

Daniel E. Muse, City Atty., James Thomas, Asst. City Atty., April L. Snook, Asst. City Atty., Denver, for defendants-appellees City and County of Denver, Dept. of Excise and Licenses of City and County of Denver, and Mary A. Sylvester, in her capacity as Director of Excise and Licenses.

---

\* Roy, J., would grant rehearing.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for defendant-appellee Dept. of Revenue.

Opinion by Judge BRIGGS.

For over forty-five years plaintiff, the Squire Restaurant and Lounge, Inc., held a liquor license and operated a tavern in the City and County of Denver. In 1992, the Director of the Denver Department of Excise and Licenses (Department) refused to renew the license. Plaintiff sought judicial review in the district court under C.R.C.P. 57 and 106(a)(4), contending that the statutory standard of "good cause" for refusing to renew a liquor license, without more, constituted an unconstitutional delegation of legislative authority and violated plaintiff's right to due process. The district court affirmed the decision refusing to renew the license. On plaintiff's appeal, we reverse and remand with directions.

In our view, the General Assembly has reasonably left to the Department the task of defining "good cause" and providing guidelines for addressing applications to renew liquor licenses. However, because the Department has enacted no such regulations, denial of the request for a renewed license violated plaintiff's right to due process.

## I.

In 1991, the Department issued an order setting a renewal hearing for plaintiff's liquor license pursuant to § 12–47–106(1)(b), C.R.S. (1991 Repl. Vol. 5B). The statute authorizes the licensing authority to refuse to renew a liquor license "for good cause shown, subject to judicial review."

The notice of hearing referred to a ten-day suspension earlier in the year for violations of the liquor code and a police report alleging that recently an intoxicated person had been served. The order further noted letters from neighborhood residents asserting there was no longer need or desire for the tavern at that location.

After a public hearing, the hearing officer found that adult inhabitants of the area who desired that the license not be renewed outnumbered those who favored renewal and that the weight of the evidence established that the bar was "dangerous." The officer concluded that the reasonable requirements of the neighborhood would be met without renewing the license. The Director accepted the decision not to renew on the sole basis that, because of other liquor licensed establishments in the area, there was "no longer a reasonable requirement or desire among the adult inhabitants of the immediate area for a liquor license of this type."

In the district court proceedings, plaintiff's challenge to the "good cause" standard relied, in part, on the requirement in § 12–47–105(1)(b), C.R.S. (1991 Repl. Vol. 5B) that the state licensing authority make general rules and regulations as necessary for the proper regulation and control of the sale of liquor. Although many regulations had been issued, it was undisputed that none had been issued pertaining to applications for license renewal.

In affirming the Director's decision, the district court concluded that the Department was not required to promulgate written guidelines for renewal hearings. The court held that the right to due process was satisfied by giving plaintiff the opportunity to present evidence, call witnesses, and cross-examine opposing witnesses before an impartial decision maker.

## II.

Plaintiff first contends that the General Assembly has unconstitutionally delegated legislative authority by failing to provide sufficient standards for defining "good cause." We disagree.

The traditional statement of the "nondelegation" doctrine is that the General Assembly may delegate power to an administrative agency only if it has provided sufficient standards to guide the agency's exercise of that power. *Cottrell v. City & County of Denver,* 636 P.2d 703 (Colo.1981). However, our supreme court in *Cottrell* recognized the impracticality and inappropriateness in many contexts of requiring anything more than the most broad and general standards to guide administrative action. The court observed

that, as a result, violation of the doctrine has been an argument frequently invoked but seldom sustained. Consistent with its observation, the court in *Cottrell* held that the Denver city charter provided sufficient standards in delegating authority to set water-rates by requiring that they be "as low as good service will permit" and "uniform as far as practicable."

The holding in *Cottrell* followed the court's earlier decision in *Elizondo v. State*, 194 Colo. 113, 570 P.2d 518 (1977). In that case the court rejected a challenge to the General Assembly's delegation to the Colorado Department of Revenue of the authority to suspend driver licenses and, if suspended, to issue probationary licenses.

The challenged provision in *Elizondo* was part of the Uniform Safety Code of 1935, which had as its purpose the protection of public safety on Colorado highways. The supreme court found this sufficient to guide the agency's exercise of its authority in adopting regulations and conducting hearings.

Here, the delegation to the Department of the authority to adopt regulations and conduct hearings on applications to renew licenses is part of the Colorado Liquor Code, § 12–47–101, et seq., C.R.S. (1991 Repl. Vol. 5B). The Code was enacted to control the manufacture, distribution, and sale of liquor for the protection of the economic and social welfare and health, peace, and morals of the people of this state. Section 12–47–102, C.R.S. (1991 Repl. Vol. 5B).

This broad scheme, like that in question in *Elizondo*, enables the Department "to utilize its expertise in determining what specific facts may be relevant to granting or denying ... licenses." *Elizondo v. State, supra*, 570 P.2d at 521. Accordingly, we conclude the delegation of legislative authority to the Department to adopt regulations and conduct hearings was not unconstitutional. *See also People v. Willson*, 187 Colo. 141, 528 P.2d 1315 (1974); *Lloyd A. Fry Roofing Co. v. Department of Health*, 179 Colo. 223, 499 P.2d 1176 (1972).

## III.

■ Plaintiff next contends that, because the Department has not adopted any regulations defining "good cause" for not renewing a license, its refusal to renew the license violates plaintiff's right to due process. In the circumstances presented here, we agree.

## A.

Because challenges to delegation are seldom sustained, important repositories of power delegated to administrative bodies are largely insulated from the constraining force of the democratic process. The supreme court in *Cottrell* therefore concluded that another mode of protecting individuals against the uncontrolled exercise of this discretionary power is necessary.

We now make explicit that the test is not simply whether the delegation is guided by standards, but whether there are sufficient statutory standards and safeguards and administrative standards and safeguards, in combination, to protect against unnecessary and uncontrolled exercise of discretionary power. The guiding consideration is whether these constraints are sufficient to insure that administrative action will be rational and consistent in the first instance and that subsequent judicial review of that action is available and will be effective.

*Cottrell v. City & County of Denver, supra*, at 709; *see also, Posters 'N' Things, Ltd. v. United States*, —— U.S. ——, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994).

In *Elizondo v. State, supra*, the Department of Revenue had been delegated the discretionary authority to issue probationary licenses. However, the Department had failed to adopt rules and regulations limiting the exercise of that power. The supreme court determined the plaintiff's right to due process had been violated.

By failing to follow [the] statutory suggestion [to adopt rules and regulations], the Department has left the granting or denial of probationary drivers' licenses solely to the unfettered discretion of individual hearing officers. As a result, neither the public nor the courts have any means of knowing in advance what evidence might

be considered material to any particular decision. Nor is there any assurance that each hearing officer will not, consciously or subconsciously, follow standards quite different from those applied by his or her colleagues.

[A]lthough the hearing officer's integrity is not questioned, in this case as in every other, there is no way for a reviewing court to determine whether a hearing officer has or has not abused his discretion. Without some stated guidelines, and specific findings of fact, judicial review is a hollow gesture.

*Elizondo v. State, supra,* 570 P.2d at 521.

Other courts have raised similar concerns in addressing challenges to refusals to issue or renew liquor licenses. For example, the Supreme Court of North Dakota in *Mini Mart, Inc. v. City of Minot,* 347 N.W.2d 131 (N.D.1984) held that, although state law vested in municipalities discretion to decide whether to grant a liquor license, a municipality must prescribe reasonable rules and regulations to govern the exercise of that discretion.

We hold only that a municipality must reserve its legislative grant of discretion through the use of written criteria which both adequately inform applicants of the standards and policies to be contemplated by the municipality, and adequately guide the licensing authority in arriving at its decision. Aside from any constitutional considerations, fundamental fairness would seem to require nothing less.

*Mini Mart, Inc. v. City of Minot, supra,* at 141.

Here, because the Department enacted no regulations, the only standard for the decision whether to renew a liquor license, as provided in § 12–47–106(1)(b), is simply "good cause." Such a standard, without more, provides no way for a licensee to know in advance what evidence might be considered relevant to a request for renewal. Likewise, there are no meaningful limits on each hearing officer's selection of criteria for determining whether to renew a liquor license.

## B.

The Department argues, and the district court concluded, it was sufficient that plaintiff was given a notice of hearing specifying the criteria to be considered. However, before *that* notice, plaintiff had no notice of what criteria might be relevant.

The plaintiff in *Roseland Inn, Inc. v. McClain,* 118 Mich.App. 724, 325 N.W.2d 551 (1982) had applied to renew the liquor license for its tavern. After several inspections of the premises by town officials, plaintiff received a notice that a hearing was to take place to determine whether the request for renewal should be denied. At the hearing, town officials and residents spoke, and the Township Board made findings on alleged violations of fire safety, electrical, plumbing, and public health regulations and other complaints. Plaintiff then filed suit to enjoin defendants from refusing to renew the license.

The court in *Roseland* observed that review of whether the actions taken at the hearing were arbitrary and capricious was hampered by the absence of any standards against which to measure the decision. Its concern extended to the lack of guidelines or standards which formed the basis for the township's *initial* request for revocation or nonrenewal:

Plaintiff argues persuasively that a liquor licensee has the right to know what criteria must be met in order to fulfill the requirements for maintaining or renewing a liquor license and that the lack of standards to give notice of such criteria violates a licensee's right to due process of law.

. . . .

We simply hold that due process requires a local legislative body to establish some standards or guidelines which provide liquor licensees with notice of what criteria will result in *initiation* of license nonrenewal or revocation proceedings.

*Roseland Inn, Inc. v. McClain, supra,* 325 N.W.2d at 554–555 (emphasis added). *See also Rosenthal v. Department of Revenue,* 40 Colo.App. 422, 579 P.2d 1176 (1978) (because

no guidelines had been established to grant or deny an application to enlarge premises under hotel and restaurant license, neither the public nor the courts had any means of knowing in advance what evidence might be considered material), *rev'd on other grounds,* 197 Colo. 506, 594 P.2d 580 (1979); *Stockade, Inc. v. Local Licensing Authority,* 40 Colo. App. 429, 576 P.2d 571 (1978).

Here, plaintiff had insufficient notice during the period it operated the tavern, after the last license renewal, of what conduct, events, or conditions during that period might be referred to or considered relevant in any hearing to determine whether to renew plaintiff's license. *See Roseland Inn. Inc. v. McClain, supra; Sa–Bleu, Inc. v. Village of Port Chester,* 42 Misc.2d 360, 247 N.Y.S.2d 943 (N.Y.Sup.1963) (ordinance prohibiting dancing after 1:00 a.m. unless permitted by town trustees upon good cause shown unconstitutionally vague).

We recognize that in some circumstances, "good cause" for an action may be reasonably determined, without more, because the competing interests are obvious and limited or there is a common understanding of what might constitute good cause. For example, in *Watso v. Department of Social Services,* 841 P.2d 299 (Colo.1992), our supreme court concluded that the authorization under § 19–3–313(5), C.R.S. (1993 Cum.Supp.) for the Director of the Department of Social Services to amend, seal, or expunge a record contained in the Central Registry For Child Protection "upon good cause shown" did not violate any right to due process.

The statutory scheme in question in *Watso* provides that, unless an investigation determines there is a preponderance of the evidence to support a finding of abuse or neglect, all information identifying the subject of a report will be expunged. The state's interest in maintaining a registry of the remaining reports and making it available to those with a need for such information is obvious. Conversely, the reasons why a subject's privacy interest may outweigh the state's interest, though varied, are subject to common understanding. *Cf. People v. Bushu,* 876 P.2d 106 (Colo.App.1994).

Likewise, while it is impossible to describe in advance the myriad situations that may constitute "good cause" for failure to comply with a prescribed legal deadline, the determination involves weighing a limited number of commonly understood factors. These include whether there were unforeseen occurrences that would cause a reasonable person to overlook the deadline, the potential prejudice to an opposing party if late filing is permitted, and considerations of judicial economy. *See Estep v. People,* 753 P.2d 1241 (Colo. 1988); *Farmers Insurance Group v. District Court,* 181 Colo. 85, 507 P.2d 865 (1973).

In contrast, the differing interests involved in determining whether to issue, suspend, revoke, or renew a liquor license are neither limited nor a matter of common understanding. Indeed, the statutory scheme pertaining to issuing, suspending, or revoking a license is extensive. The decision whether to renew a license would appear no less involved or complex. Equally important here, without regulations there is no guidance as to the conduct and conditions that could result in one or more suspensions but ultimate renewal of a license, as distinct from the conduct and conditions that would result not only in one or more suspensions but also in a decision not to renew.

We also recognize that the liquor code does separately describe some circumstances in which a request for renewal of a license may appropriately be denied for "good cause." For example, § 12–47–110(1), C.R.S. (1991 Repl. Vol. 5B) provides that any state or local licensing authority, in its discretion, may revoke "or elect not to renew" a retail license if it determines that the licensed location has been inactive, without good cause, for at least one year.

However, the authority "not to renew" on this basis is explicit, and "good cause" in this sense, as in the failure to comply with a prescribed legal deadline, involves weighing a limited number of commonly understood factors. It is thus sufficient without more to provide notice to persons of ordinary intelligence of the conduct expected of them and to allow judicial review of any action asserted to be arbitrary and capricious.

■ The Department finally argues, and we agree, that, in determining whether a specific provision in a code provides sufficient procedural safeguards, guidance may be obtained from other provisions of the code. For example, in *R & F Enterprises v. Board of County Commissioners*, 199 Colo. 137, 606 P.2d 64 (1980), the supreme court concluded that it was not unconstitutional for a statute to prohibit a license to operate a massage parlor from being issued or "held by" any person who was not "of good moral character" or who was, with respect to his "character, record, and reputation" not satisfactory to the local license authority.

The court in *R & F Enterprises* was guided by two other statutory provisions. The first required an investigation into the licensee's criminal history. The second provided generally that, whenever an agency was required to make a finding that a person was of good moral character, the fact that such applicant had been convicted of a felony or other offense involving moral turpitude must be given consideration. The supreme court concluded that "good moral character" therefore included consideration of propensities toward criminal conduct as revealed by any criminal record, taking into account such record as ameliorated by any rehabilitation. This was sufficient to uphold the revocation of a license based on an employee having been convicted of prostitution.

We also recognize that the term "good cause" is used in a liquor code that contains several requirements for the initial issuance of a license and that defines numerous prohibited acts upon which the suspension or revocation of a license may be based. Indeed, under § 12–47–137(1), C.R.S. (1991 Repl. Vol. 5B), the local licensing authority may refuse to issue an initial license "for good cause." The statutory scheme then provides several criteria that might be considered relevant to the determination of "good cause." *See* §§ 12–47–137(2) and 12–47–138, C.R.S. (1991 Repl. Vol. 5B).

However, in order to conclude that provisions such as these for the *initial issuance* of a license, together with those pertaining to *suspension* and *revocation* of licenses, provide sufficient guidance in limiting the discretion to *renew* a license, we would first have to conclude that, even though the criteria for issuing and those for suspending or revoking licenses differ significantly, the General Assembly nevertheless intended that they all apply equally to a decision whether to renew a license.

We find no basis for such an assumption in the statutory scheme. When the General Assembly has intended the criteria that apply to a decision whether to issue or revoke a license also to apply to a decision whether to renew a license, it has so indicated by the wording of the statute. For example, pursuant to § 12–47–111(1)(a)(III), C.R.S. (1991 Repl. Vol. 5B), no license may be issued to or "held by" any person who is not of "good moral character", the same statutory language in question in *R & F Enterprises v. Board of County Commissioners, supra.* Lack of good moral character therefore expressly constitutes "good cause" either to refuse to issue, to revoke, or to refuse to renew a liquor license. *Duren, Inc. v. City of Lakewood,* 709 P.2d 74 (Colo.App.1985). *See also* § 12–47–110(1) (licensing authority may "elect not to renew" in described circumstances).

There is no provision in the liquor code making any other criteria applicable to the initial issuance also applicable to the decision whether to renew a license. Nor is there any provision making any other criteria for suspension or revocation of a license applicable to a request for renewal of a license. Thus, it cannot be assumed from the statutory scheme itself that, unless so expressly provided, the criteria for issuing an initial license, or for suspending or revoking a license, necessarily apply to the renewal of a license. *See A.J.C. Enterprises, Inc. v. Pastore,* 473 A.2d 269, 274 (R.I.1984) (statute providing for revocation or suspension of license under certain circumstances "has nothing to do with the denial of an application to renew an existing license").

Moreover, statutes are to be construed to give effect to every provision. *See* § 2–4–201(1)(b), C.R.S. (1980 Repl. Vol. 1B); *De Jiacomo v. Industrial Claim Appeals Office,* 817 P.2d 552 (Colo.App.1991). This is particularly true when they are enacted on the

same subject and in the same legislative session. *See People v. Estergard,* 169 Colo. 445, 457 P.2d 698 (1969). If the criteria for the decision whether to revoke a license were construed to be identical to the criteria for the decision whether to refuse to renew a license, the provision for separate proceedings to determine whether to renew a license would be rendered superfluous.

It is also presumed that in enacting a statute a just and reasonable result is intended. Section 2–4–201(1)(c), C.R.S. (1980 Repl. Vol. 1B). However, application of the criteria for the decision whether initially to issue a license to the decision whether to renew a license could lead to unjust and unreasonable results.

For example, § 12–47–106(2), C.R.S. (1991 Repl. Vol. 5B) provides that, before granting any license, all licensing authorities shall consider, among other things, "the reasonable requirements of the neighborhood." The hearing officer in his recommended decision in this case found that "the reasonable requirements of the neighborhood will be met without this liquor license." That finding was exclusively relied upon in the Director's order refusing to renew the license, which included the observation that "there are no fewer than thirty-nine other liquor licensed establishments in the area."

Refusing to renew a license on such an economic basis ignores that the licensee has already made a substantial investment in establishing a business and maintaining it for forty-five years. In contrast, an applicant for an initial license receives notice of whether the application is granted before making such a substantial investment.

Furthermore, competing businesses may have been licensed *after* the licensee seeking renewal. The lack of a need for the licensee's business may therefore have been created in part, if not in whole, by the very agency utilizing that lack of need as a basis for now refusing to renew the license. And, as a result of the request being denied at least in part because other licenses granted for that locality are adequate for the reasonable requirements of the neighborhood, no other application can be received or acted upon concerning that location for the next two years. Section 12–47–107(3), C.R.S. (1991 Repl. Vol. 5B).

We cannot assume that the General Assembly intended such an unjust and unreasonable result. To the contrary, it is reasonable to assume that the General Assembly intended that, absent detrimental impact on the neighborhood, once a license is issued and the investment made to establish and maintain a business, the supply and demand of the market place should determine continuing economic viability.

Contrary to the Department's suggestion, the supreme court's decision in *City of Manitou Springs v. Walk,* 149 Colo. 43, 367 P.2d 744 (1961) does not require a different result. There, the court did uphold a refusal to renew a license to dispense 3.2 beer, based in part on the needs of the neighborhood, despite the absence of rules or regulations to guide discretion in determining good cause. However, no constitutional challenge based on due process was raised on appeal or addressed by the court. *Cf. Liquor & Beer Licensing Advisory Board v. Cinco, Inc.,* 771 P.2d 482 (Colo.1989).

This is not to suggest that in no circumstances could it be appropriate to consider the needs of the community in deciding whether good cause exists not to renew a liquor license. *See Price Haskel, Inc. v. Denver Department of Excise & Licenses,* 694 P.2d 364 (Colo.App.1984) (needs and desires of the neighborhood may be considered in determining whether a liquor license should not be renewed for good cause). The Department, for example, should not be precluded from addressing neighborhood concerns about such matters as unacceptable levels of neighborhood noise, parking and traffic congestion, litter, and disorderly public conduct. *See A.J.C. Enterprises, Inc. v. Pastore, supra.*

Furthermore, plaintiff's right to due process does not require the Department to enact extensive and detailed regulations. The Department needs maximum leeway in carrying out the policing function. *Mr. Lucky's Inc. v. Dolan,* 197 Colo. 195, 591 P.2d 1021 (1979). Hence, good cause might be sufficiently defined, for example, through

a regulation providing that a license need not be renewed if the licensed premises constitute a nuisance or adversely affect the surrounding environment by interfering with public decency and good order. *See Roseland Inn, Inc. v. McClain, supra; Tiger Investments of Columbus, Inc. v. Ohio Liquor Control Commission,* 8 Ohio App.3d 316, 457 N.E.2d 320 (1982). We hold only that some limit must be provided by the Department to guide discretion in determining whether there is "good cause" for refusing to renew a liquor license. *Cf. Pulido v. Heckler,* 568 F.Supp. 627, 633 (D.Colo.1983) ("While this court can define the Secretary's duty, it does not have competence, the capacity, or the constitutional authority to dictate the content of the required regulations."), *rev'd on other grounds,* 758 F.2d 503 (10th Cir.1985).

### C.

The United States Supreme Court has observed that our citizens are entitled not to have settled expectations swept away. Thus, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *See Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In addition, "selective enforcement probably engenders more injustice than delegated power but ... has always been almost altogether beyond the reach of the nondelegation doctrine and of all other judicial doctrine designed to prevent or check arbitrariness." *See* 1 K. Davis, Administrative Law § 3:15 at 207 (2d ed. 1978); *see also Roseland Inn, Inc. v. McClain, supra,* 325 N.W.2d at 555 ("without definite standards an ordinance becomes an open door to favoritism and discrimination").

A standard of "good cause" as the criterion for determining whether to renew a liquor license, without any implementing regulations, fails to provide sufficient definiteness that ordinary people can understand what conduct and conditions are required to avoid having the request refused. It further fails to "insure that administrative action will be rational and consistent in the first instance and that subsequent judicial review of that action ... will be effective." *Cottrell v. City & County of Denver, supra,* at 709; *see also Beaver Meadows v. Board of County Commissioners,* 709 P.2d 928 (Colo.1985). More particularly, the standard fails to provide "any assurance that each hearing officer will not, consciously or subconsciously, follow standards quite different from those applied by his or her colleagues." *See Elizondo v. State, supra,* 570 P.2d at 521.

Accordingly, the judgment of the district court is reversed, and the cause is remanded with directions that a judgment mandating renewal of plaintiff's liquor license be entered.

NEY, J., concurs.

ROY, J., dissents.

Judge ROY dissenting.

I respectfully dissent. I disagree with the majority's holding that the term "good cause" as used in the Liquor Code with respect to the renewal of a liquor license without regulatory definition denies due process of law. In my view, while "good cause" is admittedly a broad term, sufficient guidelines and safeguards are present to prevent the unfettered discretion of the local licensing authority in renewing or refusing to renew a liquor license.

The statute provides in pertinent part as follows:

> The licensing authority may refuse to renew any license for *good cause,* subject to judicial review.

Section 12–47–106(1)(b), C.R.S. (1991 Repl. Vol. 5B) (emphasis added).

The term "good cause" is not defined by the statute or regulation. "Good cause" is not, however, a standard without legal meaning. It has been defined as a substantial or legal justification, as opposed to an assumed or imaginary pretense. *Tucker v. People,* 136 Colo. 581, 319 P.2d 983 (1957). In a liquor license proceeding, the act complained of as constituting "good cause" should be one which adversely affects public decency, sobriety, and good order in itself. *In re Appeal of Ohio Sportservice, Inc.,* 55 Ohio Misc. 1, 378 N.E.2d 498 (1976).

While the term "good cause" is frequently used in statutes, rules, and regulations, it has rarely been challenged as denying due process. It, and similar phrases, have survived such challenges. *See Tiger Investments of Columbus, Inc. v. Ohio Liquor Control Commission,* 8 Ohio App.3d 316, 457 N.E.2d 320 (1982) ("good cause"); *Alexander v. Department of Agriculture,* 111 Ill.App.3d 927, 67 Ill.Dec. 575, 444 N.E.2d 811 (1983) ("for cause and after a hearing upon reasonable notice"). In addition, the *Alexander* court held the statute at issue was constitutionally sufficient, without more, to advise the licensee of the criteria for continued licensing. *See also Watso v. Colorado Department of Social Services,* 841 P.2d 299 (Colo.1992).

In *City of Manitou Springs v. Walk,* 149 Colo. 43, 367 P.2d 744 (1961), our supreme court held that the local licensing authority may not arbitrarily or summarily deny the renewal of a fermented beverage license but may refuse upon a showing of "good cause."

If, as here, a license has a fixed term subject to renewal, the licensee has no vested rights and is not entitled to due process with respect to renewal. *Ficarra v. Department of Regulatory Agencies,* 849 P.2d 6 (Colo. 1993) *citing Board of County Commissioners v. Buckley,* 121 Colo. 108, 117, 213 P.2d 608, 612 (1949) ("There is no vested right in a licensee to continue in the liquor business beyond the expiration of the date of the license under which he operates.").

Moreover, a liquor license may be suspended even when there is no statutory standard governing suspension. *New Safari Lounge, Inc. v. City of Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977). Indeed, in general, a licensing board has the inherent power to revoke a license upon good cause shown after notice and hearing even when no power of revocation or applicable standard was provided for in the governing statute. *State Board of Cosmetology v. Maddux,* 162 Colo. 550, 428 P.2d 936 (1967).

Squire and the majority rely on *Elizondo v. State,* 194 Colo. 113, 570 P.2d 518 (1977) as standing for the proposition that the Department of Revenue must adopt regulations defining "good cause." In *Elizondo,* in a situation in which neither the statute nor the regulations provided any standards whatsoever for the issuance or denial of a probationary driver's license during a period of suspension, our supreme court held the statute unconstitutional. Here, however, unlike *Elizondo,* the statute does contain a standard and that standard, "good cause," is, in my opinion, sufficient under the circumstances.

In this instance, the term "good cause" is used in a statutory and regulatory framework which contains a number of prohibited acts including, without exhausting the list: sales to persons under the age of twenty-one or sales to an habitual drunkard or visibly intoxicated person, § 12–47–128(5)(a)(I), C.R.S. (1991 Repl. Vol. 5B); sales at other than the licensed location, § 12–47–128(5)(g)(I), C.R.S. (1991 Repl. Vol. 5B); sales on unauthorized days, § 12–47–128(5)(c), C.R.S. (1991 Repl. Vol. 5B); failure to post specified warnings, § 12–47–128(5)(h), C.R.S. (1991 Repl. Vol. 5B); displaying certain signs, § 12–47–128(5)(j), C.R.S. (1991 Repl. Vol. 5B); and permitting gambling unless specially licensed, § 12–47–128(5)(n)(I), C.R.S. (1991 Repl. Vol. 5B).

Squire was notified by the Director of the renewal hearing in accordance with § 12–47–106(1)(b). The notice specified alleged violations and matters to be considered at the hearing, and the hearing was limited to the matters noticed. The Liquor Code provides Squire with additional protections by permitting judicial review of any decision of the local licensing authority. Section 12–47–141, C.R.S. (1991 Repl. Vol. 5B).

I conclude that the standard of "good cause," in conjunction with the procedural protections set forth in the Liquor Code, is adequate, without more, to protect against the uncontrolled exercise of discretionary power by the local licensing authority, and does not deny the licensee due process of law.