George M. SPEER, Speer Flying Service, Inc., Michael R. Johnston and G & M Aerial Spraying, Inc., Plaintiffs–Appellants,

v.

Thomas A. KOURLIS, Commissioner of Agriculture and The Colorado Department of Agriculture, Defendants–Appellees.

No. 95CA0612.

Colorado Court of Appeals, Div. II.

June 27, 1996.

Rehearing Denied Aug. 22, 1996.

Certiorari Denied March 17, 1997.

Mark A. Stanard, Brighton, Charles F. Kaiser, Denver, for Plaintiffs–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Kathie A. Greenwalt Troudt and Donna L. Rice, Assistant Attorney General, Regulatory Law Section, Denver, for Defendants–Appellees.

Opinion by Judge PLANK.

Plaintiffs, George M. Speer, Speer Flying Service, Inc. (SFS), Michael R. Johnston, and G & M Aerial Spraying, Inc. (G & M), appeal the trial court's judgment affirming the final agency order of the Commissioner of the Colorado Department of Agriculture (the Department). We affirm in part and reverse in part.

SFS and G & M are corporate entities engaged in the business of "crop dusting," the aerial application of pesticides. SFS is wholly owned by Speer, and G & M is owned by both Speer and Johnston. Speer flies the same crop dusting airplane for both entities, and Johnston performs various functions such as mixing pesticide sprays on behalf of both entities.

On January 10, 1992, the Department served notices of charges on all of the plaintiffs, alleging violations of various provisions of the Pesticide Act, § 35–9–101, et seq., C.R.S. (1995 Repl.Vol. 14), and the Pesticide Applicators' Act, § 35–10–101, et seq., C.R.S. (1995 Repl.Vol. 14). The charges against Speer and SFS related to three specific incidents: 1) the crop dusting of the Sakata Farms, 2) the crop dusting of three tree nurseries, and 3) the crop dusting of the Villano Brothers' onion fields. Johnston and G & M were only charged in relation to the crop dusting of the Villano Brothers' onion fields.

Following the consolidation of the case against Speer and SFS with that against Johnston and G & M, a hearing was held before an Administrative Law Judge (ALJ). On January 19, 1993, the ALJ issued an initial decision in which he upheld some of the charges against the plaintiffs and recommended sanctions in the form of license suspensions and civil penalties.

Both plaintiffs and the Department filed exceptions to the ALJ's initial decision. Consequently, the acting Commissioner of the Department heard oral arguments from the parties and issued the final agency order on November 5, 1993. The final agency order affirmed the ALJ's findings of fact and conclusions of law with some modification and imposed more severe sanctions against

the plaintiffs than those recommended by the ALJ.

The final agency order was affirmed by the district court on judicial review.

## I.

Plaintiffs contend that the Commissioner lacked jurisdiction to impose licensing sanctions against them as a result of the Department's failure to comply with § 24–4–104(3), C.R.S. (1988 Repl.Vol. 10A), of the State Administrative Procedure Act. We agree, in part, that the Department did not comply with § 24–4–104(3) as to plaintiffs Johnston and G & M only. Accordingly, we hold that the Commissioner had jurisdiction to impose licensing sanctions against plaintiffs Speer and SFS, but not plaintiffs Johnston and G & M.

## A.

Plaintiffs first contend that the Department violated § 24–4–104(3) in that it failed to provide them with written notice of their right to submit written data, views, and argument with respect to each of the three incidents of alleged misconduct. We disagree.

Section 24–4–104(3) provides as follows:

No revocation, suspension . . . or modification of a license by any agency shall be lawful unless, before institution of agency proceedings therefor, the agency has given the licensee notice in writing of facts or conduct that may warrant such action, afforded the licensee opportunity to submit written data, views, and arguments with respect to such facts and conduct, and, except in cases of deliberate and willful violation, given the licensee a reasonable opportunity to comply with all lawful requirements.

Plaintiffs are not alleging a lack of written notice of facts or conduct that may warrant a revocation; rather, they are asserting that they must be provided, prior to the filing of the notice of charges, with written notice of their right to submit written data, views, and arguments.

■ Initially, we reject plaintiffs' contention that the Department must provide them with *written* notice of their right to submit data and argument. Neither the language of § 24–4–104(3), as quoted above, nor the case of *Sanchez v. State*, 730 P.2d 328 (Colo.1986), which plaintiffs cite in support of this proposition, imposes such a requirement on the Department. This finding does not, however, negate the fact that plaintiffs must be afforded some opportunity to submit data and arguments prior to the institution of Department proceedings against them.

■ In this regard, the Commissioner accepted the ALJ's finding that investigators spoke with plaintiffs about each of the three incidents of alleged misconduct and gave them an opportunity to submit records and explain their position with respect to each. This finding is supported by the "applicator information reports," which were completed with respect to each incident in the presence of plaintiff Speer. Plaintiff Speer signed the applicator information reports. Plaintiff Johnston was also present when the report relating to the Villano Brothers' onion fields was completed.

Each of the applicator information reports indicates that plaintiffs' records were available, and each contains a description of the subject incident by plaintiff Speer, who applied the pesticides in each case. The reports were completed some time before the notices of charges were filed on January 10, 1992. Based on these reports, we find that plaintiffs were afforded an opportunity to submit written data, views, and argument as required by § 24–4–104(3).

## B.

Plaintiffs next contend that the Department violated § 24–4–104(3) in not giving them an opportunity to comply with the applicable legal requirements. We agree with respect to plaintiffs Johnston and G & M, but disagree with respect to plaintiffs Speer and SFS.

Section 24–4–104(3) generally requires that a licensee be given an opportunity to comply with the law before licensing sanctions are imposed. However, if the licensee's conduct is willful and deliberate, no opportunity to comply need be given before the

imposition of such sanctions. Accordingly, the first issue to be determined is whether plaintiffs' conduct was willful and deliberate, and resolution of this issue is a question of fact.

■ In 1980, on behalf of SFS, Speer entered into a stipulation and order in which he admitted to failing to comply with label requirements. Thereafter, in 1984, 1985, and 1990, the Department issued warning letters to Speer and SFS. In these letters, Speer and SFS were advised of the need to take surrounding areas into account when applying pesticides, the need to comply with labelling requirements, and the need to maintain proper records.

Based on this prior history, the ALJ concluded that plaintiffs, Speer in particular, acted willfully and deliberately in engaging in the same types of conduct that had been the subject of prior warnings. The Commissioner affirmed this conclusion.

Although the record supports the finding of willful and deliberate conduct by plaintiffs Speer and SFS, the same cannot be said for plaintiffs Johnston and G & M. Neither Johnston nor G & M was a party to the prior disciplinary action, and none of the warning letters was addressed to either of these parties. Despite the close business association held by the plaintiffs, it cannot be said that Johnston and G & M had received prior warnings about the conduct at issue in the notice of charges. There is no other evidence to support a finding that their conduct was willful and deliberate.

■ The ALJ also found that the Department need not afford plaintiffs an opportunity to comply with the law in any event because their violations were completed acts. The ALJ reasoned that, under such circumstances, it would be impossible for them to conform their conduct to the law. The Commissioner adopted this finding.

It may be true that some acts of misconduct are not replicable and, therefore, cannot subsequently be conformed with the law. See Sanchez v. State, supra. Such is not the case here, however.

Although plaintiffs Johnston and Speer cannot remedy the violations which occurred at the Villano Brothers' onion fields, they can take precautions to prevent such violations from occurring in future crop dusting operations. The holding in *Sanchez v. State, supra*, supports our conclusion that legal compliance with respect to future operations is the proper focus.

The plaintiffs in *Sanchez* were charged with illegally selling fireworks to undercover agents. The Colorado Supreme Court held that absent a finding that their conduct was willful and deliberate, the plaintiffs were entitled to an opportunity to refuse to make such sales. As the illegal sales at issue had already been completed, the requisite opportunity to comply must necessarily relate to future sales. The same is also true in this case.

Plaintiffs Johnston and G & M were not afforded the requisite opportunity to comply with the applicable legal requirements. Unlike plaintiffs Speer and SFS, Johnston and G & M had not been accused of misconduct by the Department prior to the present case. Thus, any opportunity to comply would have to have been granted after the crop dusting of the Villano Brothers' onion fields. There is no evidence to suggest that such an opportunity was afforded to plaintiffs Johnston and G & M.

## II.

Plaintiffs next contend that the Commissioner erroneously rejected the sanctions recommended by the ALJ. We disagree.

■ Plaintiffs first challenge the Commissioner's rejection of the recommended sanctions on the grounds that there are no statutory standards to restrict the Commissioner's uncontrolled discretion in imposing licensing sanctions. However, inasmuch as § 35–10–121, C.R.S. (1995 Repl.Vol. 14) expressly delineates the circumstances under which the Commissioner may take disciplinary action against a license, this argument must be rejected. *Cf. Squire Restaurant & Lounge v. City & County of Denver*, 890 P.2d 164 (Colo.App.1994) (due process rights violated when applicable statutory standard failed to apprise licensee in advance of what evidence

might be relevant to refusal to renew liquor license).

■ Plaintiffs also argue that the sanctions imposed by the Commissioner are excessive in relation to the needs of the public. If accurate, plaintiffs' argument would warrant a reversal of the imposed sanctions. *Colorado State Board of Medical Examiners v. Hoffner,* 832 P.2d 1062 (Colo.App.1992). We cannot agree, however, that the sanctions imposed by the Commissioner are excessive under the facts here present.

There is record support for the Commissioner's finding that the facts of this case reflect severe breaches of public safety and deviations from simple common sense and established standards of conduct and protection. Under such circumstances, the needs of the public surely warrant significant sanctions. Moreover, on review, we cannot substitute our judgment for that of the Commissioner as to what constitutes appropriate sanctions for plaintiffs' misconduct. *Colorado State Board of Medical Examiners v. Hoffner, supra.*

The Commissioner's finding concerning plaintiffs' severe breaches of public safety and deviations from simple common sense also provides a rationale for rejecting the ALJ's recommended sanctions. Thus, we reject plaintiffs' alternative argument that meaningful judicial review on this issue is not possible absent additional findings by the Commissioner.

### III.

Finally, plaintiffs contend that the civil penalties imposed by the Commissioner exceed the maximum amount permitted by statute. Again, we disagree.

■ Initially, we note that plaintiffs are not precluded from challenging the amount of the penalties on appeal, even though they failed to raise this issue during the administrative proceedings or the district court's judicial review. Statutory provisions which define the authority of an administrative agency are deemed jurisdictional, and thus, the question of their applicability may be raised at any time. *Sanchez v. State, supra.*

Civil penalties were assessed against plaintiffs pursuant to express provisions of both the Pesticide Act, § 35–9–101, et seq., C.R.S. (1995 Repl.Vol. 14), and the Pesticide Applicators' Act, § 35–10–101, et seq., C.R.S. (1995 Repl.Vol. 14).

■ The Commissioner modified the ALJ's conclusions of law to include a finding that plaintiffs Speer, Johnston, and G & M violated § 35–9–120(1)(i), C.R.S. (1995 Repl. Vol 14) and several regulations adopted thereunder with respect to the incident at the Villano Brothers' onion fields. As a result of these violations, each plaintiff was ordered to pay a penalty in the amount of $8,000 pursuant to § 35–9–124(1), C.R.S. (1995 Repl.Vol. 14).

Section 35–9–124(1) provides for a maximum penalty of $5,000 "per violation" of the Pesticide Act and related regulations. Hence, the $8,000 penalty assessed against plaintiffs is far less than that which the Commissioner could have imposed.

With regard to the Pesticide Applicators' Act, the relevant provision provides as follows:

> Any person who violates any provision of this article or any rule or regulation adopted pursuant to this article is subject to a civil penalty, as determined by the [C]ommissioner. The maximum penalty shall not exceed one thousand dollars per violation; except that such penalty may be doubled if it is determined ... that the person has violated the provision, rule, or regulation for the second time.

Section 35–10–122(1), C.R.S. (1995 Repl.Vol. 14).

The Commissioner adopted the ALJ's conclusions of law regarding plaintiffs' violations of the Pesticide Applicators' Act, but rejected the corresponding recommended penalties. Instead, the Commissioner ordered that plaintiffs Speer and SFS each pay penalties of $1,200 with respect to the incident at the Sakata Farms, $300 with respect to the incident at the tree nurseries, and $3,500 with respect to the incident at the Villano Brothers' onion field pursuant to § 35–10–122(1). Also pursuant to this section, the Commissioner ordered plaintiffs Johnston and G & M to each pay a penalty of $3,000 with respect to the incident at the Villano Brothers' onion fields.

■ An examination of the number of statutory and regulatory violations plaintiffs were found to have committed with respect to each of the three incidents leads us to conclude that the penalties imposed by the Commissioner pursuant to § 35–10–121(1) were well within the maximum allowable. Thus, we need not even consider whether plaintiffs had committed any repeat violations of the same rule or regulation.

■ In addition, we note that there is no statutory provision indicating that the Commissioner may not impose civil penalties pursuant to both §§ 35–9–124(1) and 35–10–121(1).

Accordingly, the trial court's judgment affirming the Commissioner's revocation of plaintiffs Speer and SFS's licenses and imposition of civil penalties is affirmed. The trial court's judgment affirming the Commissioner's imposition of civil penalties against plaintiffs Johnston and G & M is also affirmed. That portion of the judgment suspending plaintiffs Johnston and G & M's licenses is reversed, and the cause is remanded to the trial court with directions to remand to the Commissioner for an order consistent with the views expressed in this opinion.

NEY and MARQUEZ, JJ., concur.