STATE DEPARTMENT OF SOCIAL SERVICES, Plaintiff–Appellant,

v.

HILLHAVEN CORPORATION d/b/a Iliff Care Center and Golden West Care and Rehabilitation Center, Amberwood Court Care Center, Inc., d/b/a Amberwood Court Care Center, Living Centers of America–Rocky Mountain d/b/a Colonial Columns Nursing Home and Aspen Living Center, American Medical Services, Inc., d/b/a Cherrelyn Manor and MTC West, Inc., d/b/a Bethany Care Center, Defendants–Appellees.

No. 94CA0265.

Colorado Court of Appeals, Div. II.

Aug. 24, 1995.

Rehearing Denied Sept. 28, 1995.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, David P. Temple, Assistant Attorney General, Denver, for plaintiff-appellant.

Miles & Epstein, P.C., Frederick Miles, Kevin Peters, Nancy P. Tisdall, Denver, for defendants-appellees.

Opinion by Judge CASEBOLT.

Plaintiff, State Department of Social Services (now the Department of Health Care Policy & Financing) (Department), appeals the trial court's affirmance of an order entered by an Administrative Law Judge (ALJ) which required the Department to revise appraisal criteria utilized in assessing the value, for purposes of Medicaid reimbursement, of real and personal property owned and used by defendants, various nursing home operators.

On appeal, the Department contends that the ALJ exceeded his jurisdiction by erroneously interpreting a department regulation which prohibited an ALJ from altering the appraisal methodology from that contained in the most recent Request for Proposal (RFP). We hold that the interpretation rendered by the ALJ, as affirmed by the trial court, is flawed. Hence, we reverse.

The defendants are nursing homes that receive reimbursement from the Department for their care of Medicaid recipients. The amount of reimbursement due depends, in part, upon appraisals of the value of their property. The defendants and 66 other nursing homes filed administrative appeals contending that the appraisals conducted in 1990 by an appraiser chosen by the Department were erroneous. The parties stipulated to litigate a test case wherein the seven defendants presented the claims common to all facilities and all of the nursing homes and the Department agreed to be bound by the final determination.

When considering the reimbursement due nursing homes that provide care to Medicaid recipients, the Department evaluates a number of factors, including the nursing homes' "capital related assets," which includes land, buildings, and fixed equipment. Section 26–4–503(4), C.R.S. (1994 Cum.Supp.). Part of this process includes a determination of the depreciated cost of replacement of the capital assets by an appraiser, who conducts the appraisal under contract with the Department. *See* § 26–4–503(2), C.R.S. (1994 Cum. Supp.).

The appraisal is statutorily required to be performed utilizing the Boeckh Commercial Underwriters Building Valuation System for Nursing Homes, December 1985 Edition (the Boeckh System). Section 26–4–503(2), C.R.S. (1994 Cum.Supp.). The Boeckh System consists of a computer program model which allows the user to input certain specified data, or variables, regarding the physical structure and certain contents of the nursing home.

There are fifty variables which the Boeckh System can evaluate. If data are not specifically entered regarding a particular variable, the Boeckh System will generate a dollar value based on pre-programmed data that has been accumulated, analyzed, and digested to create general norms. These values are referred to as default values.

To generate an appraisal, the Boeckh System *requires* the entry of building-specific data on only seven of the fifty variables. The user may then choose to enter data to replace the default variables, or may allow the remaining variables to be calculated through the system's default mechanism.

In its 1990 Request for Proposal (RFP) directed to interested appraisal firms, the Department specified the terms and conditions under which the appraisals were to be conducted. The scope of the appraisals to be conducted on each nursing home was governed by a master contract which incorporated, by reference, the RFP. The RFP described how the contract appraiser was to conduct the appraisals. It states, in pertinent part:

> The Boeckh Commercial Underwriter's Evaluation System December 1989 Edition is the tool selected by the Department to impute a depreciated replacement cost for the buildings comprising each nursing home. The Department has decided to employ a subset of all possible Boeckh variables.... These variables are enumerated in section [5](b).

Section 5(b) of the RFP lists twenty-five variables as being required under the RFP to be entered. Section 5(f) of the RFP specifically stated that the undepreciated and depreciated replacement costs of each building unit were to be computed using the required twenty-five variables, "and the Boeckh default values for all other variables."

After the appraisals were conducted, the nursing homes timely objected to the valuations, which led to the administrative hearing herein. The following issues were presented to the ALJ: 1) whether the Department should be required to change its depreciation method from five-year intervals as specified in Boeckh System Tables to yearly intervals; 2) whether the Department should be required specifically to value the partition walls in the nursing homes' basements, rather than using the default values as specified in the

RFP; and 3) whether the Department should be required to value the plumbing fixtures in the nursing homes' basements by measuring each fixture, rather than using the default value as specified in the RFP. Essentially, the defendants contended that the Department should be required to use actual values in place of the default values for the three specific variables that measured these identified components.

At the administrative hearing, the Department disputed the ALJ's jurisdiction and authority to adjudicate the claims under Department of Social Services Regulation 8.448.7, 10 Code Colo.Regs. 2505–10 (1990) (regulation), and argued that the depreciation method requested by the nursing homes was inconsistent with the statutorily mandated Boeckh System.

The ALJ ruled in favor of the nursing homes on all three issues, and the trial court upheld the ALJ's ruling. This appeal followed.

The Department presents two arguments on appeal. First, it argues that the ALJ had no jurisdiction or authority to alter the system designated in the RFP or to require the specific entry of additional variables, based upon the language of the regulation. Second, it argues that the ALJ erred in finding that the RFP was unreasonable because the nursing homes failed to prove the amount, if any, of damages they suffered thereby. Because we agree that the ALJ lacked jurisdiction and authority to order the Department to recalculate and specifically to enter the actual values for the three contested variables, we do not reach the second issue.

Department of Social Services Regulation 8.448.7, 10 Code Colo.Regs. 2505–10 (1990), generally sets out the procedure and criteria for determining fair rental value, a component of fair rental allowance which, in turn, depends upon the depreciated cost of replacement of capital assets and thus impacts the amount of reimbursement available. That regulation further governs appeal procedures for affected nursing homes. It provides in pertinent part as follows:

When the first rate letter for July 1, 1990 rates that incorporates the new appraisal is issued, the provider may appeal the appraisal. Failure to timely appeal this rate letter shall cause all subsequent appeals by the provider of appraisal issues to be untimely, and the appeals shall not be heard. The administrative law judge shall not under any circumstances alter the appraisal methodology from the most recent RFP but may alter the findings of fact, judgments and opinions contained in the appraisal report.

Under this regulation, the validity of which is not in issue here, the ALJ may not change the "appraisal methodology from the most recent RFP . . . ."

The regulation does not contain any definition of "appraisal methodology." The ALJ determined that there was substantial dispute and room for interpretation about the term "appraisal methodology" as used in the regulation. He concluded that it meant the appraisal method or system of methods, *i.e.*, the general approach.

On this basis, the ALJ further concluded that, while the regulation prohibited him from changing to a different appraisal system than the statutorily mandated Boeckh System, he nevertheless had jurisdiction and authority to determine whether it was appropriate to choose to use certain variables in lieu of the default variables called for in the RFP. Consequently, he held that the specific choices made by the Department and expressed in the RFP concerning the conduct of the survey and the variables to consider were open to review for their reasonableness.

The Department contends, and we agree, that the ALJ misread the regulation.

 A statute or regulation must be read in its entirety, and the terms and words therein must be given their plain and ordinary meaning. *See R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980); *City of Lakewood v. Mavromatis,* 817 P.2d 90 (Colo.1991). Further, we must construe the whole of the regulation to give a consistent, harmonious, and sensible effect to all of its parts. *Adams*

*v. Colorado Department of Social Services,* 824 P.2d 83 (Colo.App.1991).

Here, the regulation specifically precludes the ALJ from altering "the appraisal methodology from the most recent RFP." Accordingly, the RFP terms are incorporated.

■ The RFP, as quoted above, reflects the Department's choice to employ a subset from the possible Boeckh variables, selecting those which, in its view, impacted replacement costs most significantly. Those twenty-five variables were enumerated in the RFP. All other variables were directed by the RFP to be calculated using the Boeckh default values.

Hence, even if we read the term "appraisal methodology" as the ALJ did to refer only to the Boeckh System generally, we cannot ignore the balance of the regulation that requires adherence to the most recent RFP, which, in itself, sets forth the specific variables that will be entered to override the default values in the Boeckh computer model. The ALJ's interpretation ignores this specific language.

■ The author of the regulation, who also drafted the RFP, testified that the regulation was written for the specific purpose of avoiding disputes regarding the variables to be entered while using the Boeckh System and that the list of variables in the RFP was part of the methodology. Furthermore, this interpretation is consistent with the interpretation given the regulation by the Department prior to this dispute. Consequently, that interpretation is entitled to weight. *See Orsinger Outdoor Advertising, Inc. v. Department of Highways,* 752 P.2d 55 (Colo.1988).

Accordingly, the ALJ could not require those variables which were to be assigned default values to be specifically calculated without altering the terms of the appraisal methodology set forth in the RFP. This failure to follow the methodology in the RFP violated Social Services Regulation 8.448.7 D3.

As noted above, the Boeckh System itself requires only seven variables to be specifically entered, and allows the user to determine which, if any, of the remaining variables will be specifically entered and which remaining ones are to be assigned default values. Accordingly, Social Services' decision to assign twenty-five of the variables as default variables, including the three contested variables here, is consistent with the General Assembly's mandate that the Boeckh System be the method utilized for property assessments.

Indeed, the regulation using the language at issue was adopted in June 1990, after § 26–4–503, C.R.S. (1994 Cum.Supp.) was enacted. The statute directs that the depreciated cost of replacement appraisal shall be based on the Boeckh System. If the regulatory language prohibiting the ALJ from changing the "appraisal methodology" refers only to the Boeckh System, as the ALJ read it, then it simply requires that which the statute already commands. This leads to the conclusion that the prohibition against alteration of "appraisal methodology from the most recent RFP" is meant to provide guidance in determining how to comply with the statutory direction. Further, this reading avoids redundancy. Hence, because the system is already specified by statute, "appraisal methodology" must mean more than the general approach; it includes the individual variables specified in the RFP.

Moreover, in view of this determination and contrary to defendants' contention, it is of no consequence whether the persons conducting the appraisals were "qualified appraisers" because use of the default values supersedes the use of any professional judgment or the exercise of any professional discretion as to these variables. The contested variables used the default values specified in the computer program; hence, the appraiser would not make any entries to supersede those values inherent in the computer program.

Furthermore, the fact that the appraisers employed actually did enter more variables than called for in the RFP does not change the analysis. It is undisputed that the Department did not discover this error until well after this litigation commenced; therefore, those actions shed no light on the interpretation of the regulation.

As a result, the interpretation of the regulation by the ALJ cannot stand. Accordingly, the holding of the trial court affirming the order of the ALJ is reversed, and the cause

is remanded for further proceedings consistent with this opinion.

JONES, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL specially concurring:

I agree that the regulation can bear only the interpretation placed upon it by the majority and that the Administrative Law Judge erred in adopting another interpretation; the cause, therefore, must be reversed and remanded.

I cannot help but to observe, however, that the statute and regulation, by collectively adopting an *assumed* evaluation for certain items and by prohibiting a party from contesting those valuations, could well result in the denial of procedural and substantive due process of law in some instances. However, whether the real value of the property here so far exceeded the value assumed by the statutory and regulatory appraisal system as to result in such a violation in this case is not an issue that has been presented to us. Hence, we have no occasion to consider that question with respect to these properties.