Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 27, 2020

**2020 CO 31**

**No. 19SC650** *Langer v. Board of County Commissioners*—Land Use
Classifications—C.R.C.P. 106(a)(4).

This case is a companion to *Yakutat Land Corp. v. Langer*, 2020 CO 30, __ P.3d __,

also decided today, and like that case, the present case is before the supreme court

on a transfer from the court of appeals pursuant to C.A.R. 50.  Here, the court must

decide whether a Board of County Commissioners (the "BOCC") misconstrued

applicable law and abused its discretion in finding that defendant's mountain

coaster project was properly classified as a Park and Recreation Facility, rather

than as an Outdoor Commercial Recreation or Entertainment Establishment.

The supreme court now concludes that the BOCC correctly construed the

applicable code provisions, and, applying the deferential standard of review

mandated here, the court further concludes that the BOCC did not abuse its

discretion in classifying the mountain coaster project as a Park and Recreation

Facility.  Accordingly, the supreme court affirms the judgment of the district court

below.

**2020 CO 31**

**Supreme Court Case No. 19SC650**
*C.A.R. 50 Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 19CA947
Larimer County District Court Case No. 18CV31008
Honorable Juan G. Villaseñor

**Petitioners:**

Peter E. Langer III, Linda W. Langer, M. Marsha Sypher, Dennis D. Sohocki, Dena L. Sohocki, and Janet Lynn Gehlhausen,

v.

**Respondents:**

Board of Commissioners of Larimer County, Colorado and Yakutat Land Corporation.

**Judgment Affirmed**
*en banc*
April 27, 2020

**Attorney for Petitioners:**
Rebecca L. Urquhart
    *Estes Park, Colorado*

**Attorneys for Respondent Board of County Commissioners of Larimer County, Colorado:**
Larimer County Attorney's Office
Jeannine S. Haag
William G. Ressue
    *Fort Collins, Colorado*

**Attorneys for Respondent Yakutat Land Corporation:**
Snell & Wilmer L.L.P.
Nathan K. Davis
        *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case is a companion to *Yakutat Land Corp. v. Langer,* 2020 CO 30, __ P.3d __, also decided today, and like that case, the present case is before us on a transfer from the court of appeals pursuant to C.A.R. 50. Here, we must decide whether the Larimer County Board of County Commissioners (the "BOCC") misconstrued applicable law and abused its discretion in finding that defendant Yakutat Land Corporation's ("Yakutat's") mountain coaster project was properly classified as a Park and Recreation Facility, rather than as an Outdoor Commercial Recreation or Entertainment Establishment.

¶2 We now conclude that the BOCC correctly construed the applicable code provisions, and, applying the deferential standard of review mandated here, we further conclude that the BOCC did not abuse its discretion in classifying the mountain coaster project as a Park and Recreation Facility. Accordingly, we affirm.

## I. Facts and Procedural History

¶3 The facts and procedural history of this case are more fully set forth in *Yakutat*, ¶¶ 4–13, and we need not repeat all of those facts here. Instead, we will constrain ourselves to the facts pertinent to the present appeal.

¶4 Yakutat sought to place a gravity-driven roller coaster and related infrastructure (e.g., a coaster storage building, ticketing office, restroom facilities, and parking area) on its property. To that end, Yakutat submitted a proposed

3

development plan to the Estes Park Community Development Department (the "Department"), seeking approval for its mountain coaster project.

¶5 As pertinent here, the Department determined that the project was properly classified under the Estes Valley Development Code (the "Code") as a Park and Recreation Facility, which was a use by right (or permitted use), rather than as an Outdoor Commercial Recreation or Entertainment Establishment, which was not a permitted use under the Code. Randy Hunt, Estes Park's Community Development Director, and his staff arrived at this determination for three reasons. First, the property at issue had previously been classified as a Park and Recreation Facility because it had long been used for horse trail rides offered by a neighboring stable. Second, the proposed use of the property for the mountain coaster was deemed to be "a less intense use" in terms of proportionality, scale, and density than would be typical of an Outdoor Commercial Recreation or Entertainment Establishment. In support of this finding, the Department noted that the proposed mountain coaster would occupy a total footprint of no more than eight acres in the interior of Yakutat's 160-acre tract of land, leaving the vast majority of the property undisturbed. Accordingly, the expansion in the use of the property resulting from the mountain coaster would be modest. Finally, the Department considered the fact that the common law rule was to construe property restrictions in favor of the free, as opposed to the more restrictive, use of land.

4

¶6 The plaintiffs, a group of owners of neighboring properties (the "Neighbors"), appealed the Department's determination to the BOCC. After a public hearing, the BOCC affirmed the Department's decision, concluding, for the reasons cited by the Department's staff, that the mountain coaster project was properly classified as a Park and Recreation Facility. In so ruling, the BOCC stated that it was most persuaded by the following facts: (1) the mountain coaster would be a low-intensity use, given that it would occupy a total footprint of eight acres near the middle of a 160-acre tract and that the number of vehicle trips and the visual and noise impacts that it would generate would be minimal; (2) the coaster would essentially follow existing horse trails and would therefore effect only a modest intensification of use; (3) the definition of Park and Recreation Facility had been amended to remove the prior requirement that the use be for non-commercial purposes; (4) the coaster would be a single attraction and thus would not qualify as an amusement park (which would justify classification as an Outdoor Commercial Recreation or Entertainment Establishment); and (5) the common law favors construing property restrictions in favor of the free use of land.

¶7 Pursuant to C.R.C.P. 106(a)(4), the Neighbors then filed a petition for review in the Larimer County District Court. In a lengthy and comprehensive written order, that court ultimately affirmed the BOCC's determination.

¶8    As pertinent here, the court began by noting that "Park and Recreation Facilities" and "Outdoor Commercial Recreation or Entertainment Establishments" are distinct classifications in the Code. A Park and Recreation Facility is a low-intensity use that includes, among other things, parks, playgrounds, recreation facilities, and open spaces. An Outdoor Commercial Recreation or Entertainment Establishment, in contrast, is a high-intensity use that includes go-kart tracks, riding academies, and amusement parks.

¶9    Finding these definitions unambiguous, the district court ultimately concluded that competent evidence in the record supported the BOCC's finding that the mountain coaster fell within the Park and Recreation Facility classification. In so concluding, the court found that the BOCC had (1) properly considered the enumerated characteristics in the Code, focusing on the amount of activity or intensity; (2) correctly found that the visual, noise, and traffic impacts of the coaster would be minimal; and (3) rightly distinguished the mountain coaster from the higher intensity uses of an Outdoor Commercial Recreation or Entertainment Establishment. The court thus determined that the BOCC's interpretations and applications of the Code were reasonable in light of the evidence presented.

¶10   The Neighbors then appealed the district court's determination to the court of appeals. In both this case and in the *Yakutat* case, however, the court of appeals

filed C.A.R. 50 motions in this court for a determination of jurisdiction. As pertinent here, the court of appeals noted in the *Yakutat* case, that the district court had found a portion of the Code to be unconstitutional. This, in turn, raised a question under section 13-4-102(1)(b), C.R.S. (2019), as to the court of appeals' jurisdiction to hear the *Yakutat* case, because that statute restricts the jurisdiction of the court of appeals in cases in which a municipal charter provision has been declared unconstitutional. The court of appeals asked us to determine where jurisdiction of the *Yakutat* case properly lay, and if we accepted jurisdiction in that case, to accept jurisdiction in the present case as well, because this case involves the same parcel of land and the same zoning determination as the *Yakutat* case. We accepted jurisdiction in both cases.

## II. Analysis

¶11    We begin our analysis by setting forth the applicable standard of review. We then discuss the pertinent provisions of the Code. We end by addressing whether the BOCC properly construed these provisions and whether it abused its discretion by classifying the mountain coaster project as a Park and Recreation Facility, rather than as an Outdoor Commercial Recreation or Entertainment Establishment.

## A. Standard of Review

¶12    "Our review under C.R.C.P. 106(a)(4) is limited to 'a determination of whether the [governmental] body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.'" *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000) (alteration in original, quoting C.R.C.P. 106(a)(4)(I)).  Accordingly, in reviewing an administrative decision under C.R.C.P. 106(a)(4), we sit in the same position as the district court.  *Id.*

¶13    In conducting our review under C.R.C.P. 106(a)(4), we apply a deferential standard, and we may not disturb the governmental body's decision absent a clear abuse of discretion.  *Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 22, __ P.3d __.  A governmental entity abuses its discretion only when it applies an erroneous legal standard or when no competent evidence in the record supports its ultimate decision.  *See id.*  We will conclude that no competent evidence supported an administrative decision only when that decision was "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority."  *Freedom Colo. Info., Inc. v. El Paso Cty. Sheriff's Dep't*, 196 P.3d 892, 900 (Colo. 2008).

## B. Applicable Law

¶14 Yakutat's property falls within an RE-1 Rural Estate Zoning District. The Code defines such a district as one "established to protect and preserve some of the most rural areas of the Estes Valley in which significant view sheds, woodlands, rock outcroppings, ridgelines, other sensitive environmental areas and low-density residential development comprise the predominant land use pattern." Estes Valley Dev. Code § 4.3(A)(1) (Apr. 2020).

¶15 Under the Code, certain uses are expressly permitted in an RE-1 Rural Estate Zoning District. *Id*. at § 4.3(B). As pertinent here, a Park and Recreation Facility is one such permitted use. *Id.* An Outdoor Commercial Recreation and Entertainment Establishment, in contrast, is not. *See id.* (not listing such a use as one of the permitted uses).

¶16 At the time pertinent here, the Code defined "Park and Recreation Facilities" as "[p]arks, playgrounds, recreation facilities and open spaces." Estes Valley Dev. Code § 13.2(C)(34) (Jan. 2019). Although at one point, this provision required that such uses be non-commercial, the definition was amended to eliminate that restriction. *See* Bd. of Trustees of the Town of Estes Park, Colo., Ordinance No. 17-17 (2017).

¶17 "Commercial Recreation or Entertainment Establishments, Outdoor," in turn, were and are defined as "[a]ny outdoor enterprise whose main purpose is to

9

provide the general public with an amusing or entertaining activity, where tickets are sold or fees collected at the gates of the activity." Apr. 2020 Code, at § 13.2(C)(13)(a). The Code lists as examples of this classification "go-kart tracks, outdoor mazes, riding academies, roping arenas, livery stables, equestrian arenas, amusement parks, golf driving ranges, miniature golf facilities and zoos." *Id.* at § 13.2(C)(13)(b).

¶18 The Code provides that use classifications such as these "classify land uses and activities based on common functional, product or physical characteristics. Characteristics include the type and amount of activity, the type of customers or residents, how goods or services are sold or delivered and site conditions." *Id.* at § 13.2(A).

¶19 To assist the pertinent governmental authorities in determining a subject property's appropriate use classification, the Code sets forth the following considerations that are to be used:

1. The actual or projected characteristics of the subject use compared to the stated characteristics of each use classification allowed in the zoning district . . . ;

2. The relative amount of site area or floor space and equipment devoted to the use;

3. Relative amounts of sales from the subject use compared to other permitted uses;

4. The relative number of employees in each use;

10

5.    Hours of operation;

6.    Building and site arrangement;

7.    Vehicles used with the use;

8.    The relative number of vehicle trips generated by the use;

9.    Signs expected in conjunction with the use;

10.    How the use advertises itself;

11.    Whether the use is likely to be found independent of other uses on the site;

12.    Any other potential impacts of the subject use relative to other specific uses included in the classification and permitted in the applicable zoning district; and

13.    Whether the subject use is consistent with the stated intent and purposes of this Code and the zoning district in which it is to be located.

*Id.* at § 3.12(C).

### C. The BOCC's Construction of the Code and Exercise of Discretion

¶20 Applying the foregoing provisions, the Department concluded, and the BOCC affirmed, that the purposes of the Code and consideration of the factors set forth therein warranted classification of the mountain coaster project as a Park and Recreation Facility. The Neighbors now contend that in so concluding, the BOCC misconstrued the Code and otherwise abused its discretion. We are unpersuaded.

¶21 As an initial matter, we conclude that the BOCC correctly construed the applicable Code provisions.

11

¶22 As both the Department and the BOCC recognized, the mountain coaster project could possibly be classified as either a Park and Recreation Facility or as an Outdoor Recreation or Entertainment Establishment. Specifically, at the time pertinent here, Park and Recreation Facilities were defined to include recreation facilities, and the mountain coaster at issue here certainly would fall within that definition. *See* Jan. 2019 Code, at § 13.2(C)(34). Conversely, an Outdoor Commercial Recreation or Entertainment Establishment was and is defined as "[a]ny outdoor enterprise whose main purpose is to provide the general public with an amusing or entertaining activity," and the mountain coaster would fit within that definition as well. Apr. 2020 Code, at § 13.2(C)(13)(a).

¶23 Faced with this potential overlap, both the Department and the BOCC looked to the purposes of the Code, as well as to the above-quoted considerations set forth therein that were to be used to determine a particular use's classification. *See id.* at §§ 1.3(H), 3.12(C). In our view, this method of analysis was not only proper but also it was mandated by the Code.

¶24 As noted above, section 3.12(C)(13) requires the Department, in determining the appropriate classification of a proposed use, to consider whether the subject use was "consistent with the stated intent and purposes of this Code." One such purpose is to encourage development that preserves and protects the character of the community and minimizes objectionable noise, glare, odor, traffic, and other

12

impacts of such development, especially when adjacent to residential uses. *See id.* at § 1.3(H).

¶25 In addition, section 3.12(C) sets forth the considerations that must be examined in making a use classification. These include, among other things, the characteristics of the subject use compared to the characteristics of each use classification allowed in the zoning district, the relative amount of site area devoted to the use, the building and site arrangement, the relative number of vehicle trips generated by the use, and any other potential impacts of the subject use relative to other specific uses included in the classification and permitted in the applicable zoning district. *Id.* at § 3.12(C).

¶26 In our view, in considering the intensity of the mountain coaster's use, the increase in intensity resulting from that use, the consistency of the use with the definition of a Park and Recreation Facility, the contrast between this use and uses such as an amusement park (which would be an Outdoor Commercial Recreation or Entertainment Establishment), and the applicable law, the BOCC complied with the requirement that it consider both the purposes of the Code and the pertinent factors enumerated therein and described above.

¶27 For these reasons, we perceive no error of law in the BOCC's construction of the pertinent Code provisions or in the analytical framework that it employed.

The question thus becomes whether the BOCC abused its discretion in applying this framework to the facts of this case. We conclude that it did not.

¶28 Here, as noted above, the BOCC found that (1) the mountain coaster would be a low-intensity use, given that it would occupy a total footprint of eight acres near the middle of a 160-acre tract and that the number of vehicle trips and the visual and noise impacts that it would generate would be minimal; (2) the coaster would essentially follow existing horse trails and would therefore effect only a modest intensification of use; (3) the definition of Park and Recreation Facility had been amended to remove the requirement that the use be non-commercial; (4) the coaster would be a single attraction and thus would not constitute an amusement park; and (5) the common law favors construing property restrictions in favor of the free use of land.

¶29 The record amply supports each of these findings. Indeed, the Neighbors do not appear to challenge, in a substantive way, any of such findings. Rather, at root, the Neighbors essentially ask us to reweigh the evidence and conclude that the mountain coaster is an Outdoor Commercial Recreation or Entertainment Establishment because, in the Neighbors' view, the project more closely fits that definition than the definition of a Park and Recreation Facility.

¶30 Although the Neighbors' argument is not without force, and indeed we might have reached a different conclusion than the BOCC were we deciding this

14

case in the first instance, under our applicable standard of review, we do not do so. Instead, our review is limited to whether the BOCC correctly construed the applicable Code provisions and, if so, whether it abused its discretion in applying those provisions to the facts before it. On the facts presented here, and given the substantial deference that we must afford the BOCC's determination, *see Stor-N-Lock Partners*, ¶ 22, we cannot say that the BOCC abused its discretion in finding that the mountain coaster was a Park and Recreation Facility within the meaning of the Code.

¶31    In so concluding, we are not persuaded by the Neighbors' contentions that (1) the removal of the requirement of non-commercial use from the definition of Park and Recreation Facilities was merely a housekeeping change that was intended to allow farmers' markets to continue and (2) allowing commercial uses on private land was an unintended consequence of that legislative amendment. These contentions effectively ask us to rewrite the definition of Park and Recreation Facilities to preclude all non-commercial uses other than the existing farmers' markets. This, however, we cannot do. *See People v. Cali*, 2020 CO 20, ¶ 17, 459 P.3d 516, 519 ("We do not add words to a statute or subtract words from it."); *Town of Erie v. Eason*, 18 P.3d 1271, 1275 (Colo. 2001) ("To properly construe a municipal ordinance, we must turn to the rules of construction applying to statutory provisions."). Nor can we presume that those who enacted the

15

amendment to the Code used language idly and with no intent that meaning should be given to the language used, which the Neighbors' contention would essentially require us to do. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008).

¶32 We likewise are unpersuaded by the Neighbors' argument that section 1.8(A)(1) of the Code required the governmental bodies below to impose the more restrictive use on the subject property, which here would have been an Outdoor Commercial Recreation or Entertainment Establishment classification.

¶33 Section 1.8(A)(1) provides:

> When the provisions of this Code are inconsistent with one another, or when the provisions of this Code conflict with provisions found in other ordinances, codes or regulations adopted by the Town of Estes Park or Larimer County, the more restrictive provision shall govern unless the terms of the provisions specify otherwise.

¶34 Here, although the definitions of a Park and Recreation Facility and of an Outdoor Commercial Recreation or Entertainment Establishment arguably overlap, we perceive nothing in those provisions that are inconsistent with one another. Nor do we see any conflict between those provisions and any provisions found in other ordinances, codes, or regulations adopted by Estes Park or Larimer County. As a result, section 1.8(A)(I) does not apply in this case.

16

¶35 For all of these reasons, we perceive no abuse of discretion by the BOCC in finding that the subject property should be classified as a Park and Recreation Facility.

## III. Conclusion

¶36 For the reasons set forth above, we conclude that the BOCC correctly construed the provisions of the Code and then properly exercised its discretion in applying those provisions to the facts before it. We thus further conclude that the district court correctly upheld the BOCC's determination that Yakutat's mountain coaster project was properly classified as a Park and Recreation Facility, and we therefore affirm the district court's judgment.