Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 27, 2020

**2020 CO 30**

**No. 19SC651, *Yakutat Land Corp. v. Langer*—C.R.C.P. 106(a)(4) Claims—
Zoning—Development Codes—Judicial Review—Administrative Review.**

This case arises out of a zoning dispute involving the propriety of
constructing a gravity-based mountain roller coaster in the Estes Valley.  The
supreme court is now asked to decide whether the local authorities tasked with
making and reviewing zoning determinations abused their discretion in
interpreting and applying the Estes Valley Development Code when they
determined that the proposed mountain coaster could be constructed.  Applying
the deferential standard of review required for an action brought pursuant to
C.R.C.P. 106(a)(4), the court concludes that they did not abuse their discretion.

The supreme court is also asked to consider whether the constitutionality of
the Estes Valley Development Code could be appropriately raised or considered
on appeal to district court in a suit brought exclusively as a C.R.C.P. 106 claim.
C.R.C.P. 106 proceedings are reserved for challenges to the judicial and quasi-

judicial actions of government actors rather than the law itself.  As such, the court concludes that the constitutionality of the Estes Valley Development Code could not be appropriately raised or considered in district court in a C.R.C.P. 106 action.

Accordingly, the judgment of the district court is reversed.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2020 CO 30**

**Supreme Court Case No. 19SC651**
*C.A.R. 50 Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 19CA1011
Larimer County District Court Case No. 18CV31067
Honorable Gregory M. Lammons, Judge

**Petitioners:**

Yakutat Land Corporation and Estes Valley Board of Adjustment,

v.

**Respondents:**

Peter E. Langer III, Linda W. Langer, M. Marsha Sypher, Dennis D. Sohocki,
Dena L. Sohocki, and Janet Lynn Gehlhausen.

**Judgment Reversed**
*en banc*
April 27, 2020

**Attorneys for Petitioner Yakutat Land Corporation:**
Snell & Wilmer L.L.P.
Nathan K. Davis
 *Denver, Colorado*

**Attorneys for Petitioner Estes Valley Board of Adjustment:**
Larimer County Attorney's Office
Jeannine S. Haag
William G. Ressue
 *Fort Collins, Colorado*

**Attorney for Respondents:**

Rebecca L. Urquhart
        *Estes Park, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

2

¶1 This case and its companion, *Langer v. Board of Larimer County Commissioners*, 2020 CO 31, __ P.3d __, also decided today, arise out of a contentious zoning dispute that has pitted neighbor against neighbor. That dispute involves the propriety of constructing a gravity-based mountain roller coaster in a part of the Estes Valley in which "significant view sheds, woodlands, rock outcroppings, ridgelines, other sensitive environmental areas and low-density residential development comprise the predominant land use pattern." Estes Valley Dev. Code § 4.3(A)(1).

¶2 But in neither case do the parties ask this court to weigh in on the merits of placing the mountain coaster in its proposed location. Instead, we are asked only whether the local authorities tasked with making and reviewing zoning determinations abused their discretion in interpreting and applying the Estes Valley Development Code (the "Code") when they determined that the proposed mountain coaster could be constructed.[1] Applying the deferential standard of

---

[1] Specifically, we are asked to review the following issues:

1. Whether the Board of Adjustment abused its discretion or exceeded its authority by declining to reconsider the Use-Classification Decision.

2. Whether the Board of Adjustment abused its discretion or exceeded its authority by concluding that Staff (not the Planning Commission) had authority to review and approve the Development Plan.

review that we must for an action brought pursuant to C.R.C.P. 106(a)(4), we conclude that they did not.

¶3 In this case, we also consider an additional question arising from the district court's order finding a provision of the Code to be in violation of the Colorado Constitution: Could the constitutionality of the Code be appropriately raised or considered in a suit brought exclusively as a Rule 106 claim? We conclude that it could not. Rule 106 proceedings are reserved for challenges to the judicial and quasi-judicial actions of government actors. In other words, these claims challenge the application of a law in a particular instance, not the law itself.

## I. Facts and Procedural History

¶4 The Estes Valley Development Code was created through an intergovernmental agreement between the Town of Estes Park and Larimer County. Its provisions govern land use and development within the Estes Valley. Pursuant to the Code, landowners interested in developing their property must submit a development application with the Estes Valley Community Development Department (the "Department"). The Code sets out detailed standards for what kinds of uses are permissible in different zoning districts within the Estes Valley

---

3. Whether the Board of Adjustment abused its discretion or exceeded its authority by not requiring Location and Extent review.

as well as which entities are responsible for initial decision-making on a development application and for hearing appeals from those initial decisions.

¶5 On April 18, 2018, the Yakutat Land Corporation ("Yakutat") submitted a proposed development plan to the Department to build a gravity-driven mountain roller coaster on land that it owned in unincorporated Larimer County outside of Estes Park. According to the proposal, the coaster would be "approximately 1,960 feet in downhill length, with related infrastructure including a coaster storage building, ticketing office, restroom facilities, and parking area." The development would also require the extension of utilities, including electric, water, and wastewater, as well as a new driveway to reach the proposed 19-spot parking area. The coaster and related infrastructure would occupy 8 acres on Yakutat's 160-acre plot.

¶6 Section 3.8(B) of the Code defines which proposed development plans can be reviewed by staff at the Department and which must be reviewed by the Estes Valley Planning Commission (the "Planning Commission"). As relevant here, development plans that propose more than 20 parking spaces, construction of more than 10,000 square feet of floor area, or more than 10,000 square feet of "major alterations" to existing structures must be reviewed by the Planning Commission. Plans proposing development below those thresholds may be reviewed by staff. Because Yakutat's proposal involved only 19 parking spaces

and significantly less than 10,000 square feet of construction, the Department staff determined that the Code authorized staff review.

¶7 In conducting its review, the staff determined that the mountain coaster could reasonably be classified under the Code as one of two things—a "Park and Recreation Facility" or a "Commercial Recreation or Entertainment Establishment, Outdoor." The choice between these two definitions was consequential. Yakutat's land was zoned under the Code as a Rural Estate Zoning District (RE-1), and in an RE-1 district, parks and recreational facilities are permitted as a use by right, while commercial recreation establishments are absolutely prohibited. Because the coaster was a single activity that occupied only 8 of 160 acres, the staff concluded that it was the kind of low-density use encompassed within the definition of a "Park and Recreation Facility." Accordingly, the staff approved Yakutat's development plan.

¶8 Several neighboring property owners (the "Neighbors") filed appeals with both the Estes Valley Board of Adjustment ("BOA") and the Larimer County Board of County Commissioners ("BOCC"). The BOCC held a public hearing on October 2, 2018, and concluded that: (1) it had jurisdiction over the appeal under the Code because "use-classification" decisions are properly appealed to the BOCC; and (2) the staff properly classified Yakutat's proposed coaster as a "Park and Recreation Facility." The Neighbors filed a petition for review pursuant to C.R.C.P. 106(a)(4)

6

in the Larimer County District Court. The district court affirmed the BOCC's determination and, in *Langer*, we affirm the district court's decision today.

¶9 Meanwhile, two weeks after the BOCC made its determination, the BOA held a public hearing on the Neighbors' appeal to that entity. The Neighbors' counsel argued at the hearing that, although the Code provides that use-classification decisions are appealable to the BOCC, it also provides that Code interpretation decisions are appealable to the BOA. While the BOCC had upheld the staff decision on the use-classification two weeks earlier, the Neighbors asked the BOA to reach a contrary determination as a matter of Code interpretation. The BOA declined that request. The BOA did, however, uphold the decision to assign review of the proposal to Department staff rather than the Planning Commission and to approve the proposal without a location and extent review. Again, the Neighbors petitioned for review in the Larimer County District Court pursuant to C.R.C.P. 106(a)(4).

¶10 In this case, the Neighbors had more success with the district court than they had in their appeal of the BOCC decision. In a May 1, 2019 order, the district court found that the decision by the BOA to decline review of the use-classification decision was in accordance with "the clear language of the Estes Valley Development Code," which unambiguously states that "appeals from Staff decisions on use classifications . . . shall be taken to either the [BOCC] or Board of

7

Trustees." However, in so doing, the district court found that section 12.1(C) of the Code violated article XIV, section 18(2)(a) of the Colorado Constitution, which defines valid intergovernmental agreements as those formed "to provide any function, service, or facility lawfully authorized to each of the cooperating or contracting units." Colo. Const. art. XIV, § 18(2)(a). Colorado law provides that boards of adjustment "shall hear and decide appeals from and review any . . . determination made by any administrative official charged with the enforcement of any [zoning] ordinance." § 31-23-307(1), C.R.S. (2019). Given the mandatory nature of this statutory provision, the district court concluded that the Town of Estes Park did not have lawful authority to divest the BOA of a portion of its appellate jurisdiction. Consequently, the court remanded the issue to the BOA for independent consideration of the Neighbors' appeal of the use-classification decision.

¶11 The district court further found that, pursuant to Table 4-1 of the Code, *all* park and recreational facilities, and not only public projects, must undergo a "location and extent review." On remand, therefore, the court directed the BOA to require Yakutat's proposal to go through that review.

¶12 Finally, the district court found that the BOA did not abuse its discretion when it approved consideration of the Yakutat development proposal by Department staff rather than by the Planning Commission.

8

¶13 The Neighbors sought review of both district court decisions with the court of appeals. Because the district court found a provision of the Code to be unconstitutional, the court of appeals filed motions for determination of jurisdiction pursuant to C.A.R. 50 in this court, observing that the court of appeals does not have jurisdiction over "[c]ases in which a statute, a municipal charter provision, or an ordinance has been declared unconstitutional." § 13-4-102(1)(b), C.R.S. (2019). We accepted jurisdiction over both appeals.

## II. Analysis

¶14 We begin by considering whether it was appropriate for the district court to address the constitutionality of the Code in this C.R.C.P. 106(a)(4) action. Because only quasi-judicial, and not legislative, actions of governmental bodies can be challenged through Rule 106(a)(4), we conclude that the constitutionality of the Code was not properly before the district court. We then turn to two questions about the propriety of the BOA's application of the Code. We conclude that the BOA did not abuse its discretion in declining to review the use-classification decision or in concluding that location and extent review was not required. We therefore reverse the judgment of the district court.

### A. The Constitutionality of the Code Was Not Properly Before the District Court in This Rule 106(a)(4) Action.

¶15 We are first asked to determine whether the district court erred in addressing the constitutionality of the Code in this action brought pursuant to

9

Rule 106(a)(4). Because review under Rule 106(a)(4) is limited to whether a governmental actor abused its discretion in a quasi-judicial decision-making context, the district court should not have considered whether the Code itself was consistent with Colorado's constitution.

¶16 A district court may provide appropriate relief under Rule 106 in cases:

> (4) Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:

> (I) Review *shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion*, based on the evidence in the record before the defendant body or officer.

C.R.C.P. 106(a)(4)(I) (emphasis added). This provision does not permit judicial review of legislative acts—such as the passage of a code or ordinance—but only of quasi-judicial acts—such as the application of the ordinance to a particular set of facts. *See Liquor & Beer Licensing Advisory Bd. v. Cinco, Inc.*, 771 P.2d 482, 486 (Colo. 1989) (stating that Rule 106(a)(4) actions "are designed to permit review of quasi-judicial governmental conduct only and do not authorize review of legislative governmental acts").

¶17 Of course, the Neighbors could have challenged the constitutionality of the Code by bringing a C.R.C.P. 57 declaratory judgment action, which they could have filed at the same time as their Rule 106 action. Rule 106(a)(4) explicitly permits the joinder of Rule 106 actions with other non-Rule 106 claims.

10

C.R.C.P. 106(a)(4)(VI) ("Where claims other than claims under this Rule are properly joined in the action, the court shall determine the manner and timing of proceeding with respect to all claims."); *see also Danielson v. Zoning Bd. of Adjustment*, 807 P.2d 541, 543 (Colo. 1990) (observing that "a single complaint can combine claims for judicial review under C.R.C.P. 106(a)(4) and declaratory judgment claims under C.R.C.P. 57" challenging the constitutionality of a statute or ordinance). If the Neighbors believed both that the Code was facially unconstitutional and that it was applied incorrectly under the circumstances presented here, they could have structured their action in the district court to make both of those arguments.

¶18    But they did not do so. The only question properly before the district court, and therefore the only question properly before this court, is whether the actions of the BOA constituted an abuse of discretion given the terms of the Code. We now turn to that question.

## B. The BOA Did Not Abuse or Exceed Its Authority.

¶19    The Neighbors argue that the BOA abused its discretion in two ways.[2] First, it declined to review the use-classification decision. And second, the BOA did not

---

[2] In the district court, the Neighbors raised a third alleged error, arguing that the BOA should not have upheld the decision to subject the mountain coaster proposal to review by Department staff rather than by the Planning Commission. In their

11

require the proposal to undergo location and extent review. We perceive no abuse of discretion in either of these decisions, and we therefore affirm the BOA's decision.

¶20 We have long held that in a Rule 106(a)(4) proceeding, "a reviewing court must uphold the decision of the governmental body unless there is no competent evidence in the record to support it." *Bd. of Cty. Comm'rs of Routt Cty. v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996) (quotation omitted). We therefore sit in the same position as the district court when reviewing an administrative decision under C.R.C.P. 106(a)(4). *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000).

¶21 When determining whether a governmental actor abused its discretion, we consider whether the hearing officer misconstrued or misapplied the applicable law. *Bd. of Cty. Comm'rs v. Conder*, 927 P.2d 1339, 1343 (Colo. 1996). We also consider whether the decision under review is reasonably supported by any competent evidence in the record. *Van Sickle v. Boyes*, 797 P.2d 1267, 1272 (Colo. 1990). "No competent evidence" exists when "the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be

Answer Brief, however, the Neighbors indicated that they were no longer making that argument. We therefore do not address it here.

12

explained as an arbitrary and capricious exercise of authority." *Id.* (quoting *Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304, 1309 (Colo. 1986)).

### 1. The BOA Did Not Abuse Its Discretion When It Declined to Review the Use-Classification Decision.

¶22 On August 6, 2018, Department staff made a use-classification determination that the mountain coaster was a Park and Recreational Facility. Because that use is permitted by right in an RE-1 district, the staff approved Yakutat's development plan. The Neighbors appealed the staff determination to both the BOCC and the BOA. On October 16, 2018, after the BOCC had already upheld the use-classification determination, the BOA conducted a hearing and declined to review the staff determination because it concluded that the Code gives appellate review of use-classification decisions to the BOCC.

¶23 As discussed above, our review is limited to whether the BOA abused its discretion by misapplying or misconstruing law. *See Conder*, 927 P.2d at 1343. Section 2.1 of the Code unambiguously vests authority with the Department staff to make use-classification decisions. It also unambiguously provides that the BOCC has authority to hear appeals from use-classification decisions. Estes Valley Dev. Code § 12.1(C) ("[A]ppeals from Staff decisions on use classifications . . . shall be taken to . . . the [BOCC] . . . ."); *see also id.* § 2.1(B), Table 2-1. When the BOA declined appellate review, it did so consistent with the plain language of the Code.

13

¶24    The Neighbors argue that "code interpretation" is reviewable by the BOA, and that there was no way for the BOCC to make a use-classification decision without initial code interpretation by the BOA. While we agree that any use classification will necessarily involve code interpretation, it was not an abuse of discretion for the BOA to conclude that assignment of the more specific "use-classification" review authority to the BOCC divested the BOA of any authority to review use-classification decisions as a matter of "code interpretation." Accordingly, we hold that the BOA did not misconstrue or misapply applicable law, and therefore did not abuse its discretion.

## 2. The BOA Did Not Abuse Its Discretion by Not Requiring Location and Extent Review.

¶25    The final question we are asked to resolve is whether the BOA abused its discretion or exceeded its authority when it concluded that a location and extent review was not required prior to approval of the mountain coaster development. We conclude that it did not.

¶26    Section 3.13 of the Code, titled "Public Facility/Use Location and Extent Review," states that the section "is intended to provide an opportunity for review of the location and extent of *specified public facilities and uses* sought to be constructed or authorized within the Estes Valley, especially as to whether *such public use* is consistent with the Estes Valley Comprehensive Plan and this Code." Estes Valley Dev. Code § 3.13(A) (emphases added). The section further provides

14

that "[l]ocation and extent review shall apply to the construction or authorization of all public schools, public safety facilities, trail heads, major utilities (whether publicly or privately owned) and all other public uses not specifically exempt from this Section." *Id.* at § 3.13(B)(1)(a). Moreover, this provision of the Code is included to comply with section 30-28-110, C.R.S. (2019), which, as we have explained, "functions as part of a legislative design to coordinate the zoning authority of counties and the authority of other political subdivisions to carry out *public* projects." *Bd. of Cty. Comm'rs v. Hygiene Fire Prot. Dist.*, 221 P.3d 1063, 1068 (Colo. 2009) (emphasis added); *see also* § 30-28-110(1)(a) (setting out requirements that county and regional planning commissions conduct location and extent reviews of proposed public projects).

¶27 Notably, the Code, like section 30-28-110(1)(a), contains a single, express exception to the general rule that location and extent review is required only for public projects. Both the Code and the statute require location and extent review for "utilities (whether publicly or privately owned)." Estes Valley Dev. Code § 3.13(B)(1)(a); *see also* § 30-28-110(1)(a) (including any "public utility, whether publicly or privately owned"). The fact that these laws specifically reference privately-owned utilities is strong evidence that the legislature did not intend to include other privately-owned entities—such as parks and recreation facilities—within their reach.

15

¶28 The Neighbors argue, however, that the version of Table 4-1 in the Code applicable at the time of the BOA decision indicated that all "Parks and Recreation Facilities" were subject to location and extent review. While this is true, we do not believe that Table 4-1 can be read outside of the context of the remainder of the Code. *See Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 40, 442 P.3d 402, 411 ("A statute is to be read as a whole, giving consistent and sensible effect to all its parts."). Every other indication in the Code is that only public projects (and privately-owned utilities) are subject to location and extent review.

¶29 The BOA concluded as much, albeit implicitly, when it affirmed the Staff decision without ordering a location and extent review. That decision was not an abuse of the BOA's discretion or a misunderstanding of the Code. We reverse the contrary judgment of the district court.

## III. Conclusion

¶30 For the reasons set forth above, we conclude that the district court should not have considered the constitutionality of the Code in this action under Rule 106(a)(4). We further conclude that the BOA did not abuse or exceed its authority in construing and applying the Code. Accordingly, we reverse the judgment of the district court.

16