24CA1541 RH Mining v Summit County 07-03-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1541
Summit County District Court No. 23CV30070
Honorable Karen A. Romeo, Judge

RH Mining Claims, LLC,

Plaintiff-Appellant,

v.

Summit County Board of Adjustment,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

Ingenuity Law Colorado, Alexander Dorotik, Denver, Colorado, for Plaintiff-Appellant

Hamre, Rodriguez, Ostrander & Prescott, P.C., Donald M. Ostrander, Emily N. Ostrander, Englewood, Colorado; Jeffrey L. Huntley, County Attorney, Cameron Turpin, Assistant County Attorney, Breckenridge, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, RH Mining Claims, LLC (RH Mining), appeals the district court's order regarding RH Mining's complaint for judicial review under C.R.C.P. 106(a)(4). The district court partially granted the motion of defendant, Summit County Board of Adjustment (the BOA), to strike RH Mining's amended reply brief and affirmed Resolution No. 2023-05, which concerns RH Mining's property. We affirm the district court's order granting the motion to strike a portion of RH Mining's amended reply brief and affirming Resolution No. 2023-05.

## I.    Background

### A.    Factual Background

¶ 2     The subdivision at issue comprises 4.01 acres of land and consists of twelve lots zoned for industrial purposes. Lot 11 is at issue here. The original plan for the subdivision included only ten lots. In 1979, Summit County's regional planning commission met to discuss the subdivision project, which by then included Lot 11 and Lot 12. At this meeting, the former planning director explained that the intent was "to develop parking on Lot 11 for Lots 7, 8, 9 & 10" and that "Lots 11 and 12 need the common area to be stipulated on the plat."

¶ 3    As shown in the figure below, the proposed plat did not identify a common open area, but it labeled Lot 11 as "Open, Parking, Snowstack" and did not assign floor space to Lots 11 and 12.



| PROJECT | DATA | |
| --- | --- | --- |
| PARCEL NO. | AREA | FLOOR SPACE |
| 1 | .28 ac. | 4000 sq ft |
| 2 | .33 ac. | 4000 |
| 3 | .41 ac. | 5000 |
| 4 | .51 ac. | 5000 |
| 5 | .39 ac. | 4000 sq ft |
| 6 | .24 ac. | 2400 |
| 7 | .32 ac. | 3500 |
| 8 | .27 ac. | 5000 |
| 9 | .21 ac. | 5000 sq ft |
| 10 | .26 ac. | 6000 |
| 11 & 12 | .79 ac. | |
| Total | 4.01 ac. | 43900 sq ft |

*Proposed Subdivision Plat Detail for Lot 11*

¶ 4    The proposed plat included a dotted line with a ninety-degree angle in the middle of Lot 11 that ran parallel to the lot's outer borders.  This line ran through several other parcels in the subdivision and was identified in the plat as the "Building Setback Line."  In a "Detailed Submittal and Final Plat" for the subdivision submitted in November 1979, the project description stated that 19.7% of the subdivision would be designated common open area "to accommodate channel of French Creek, common parking and a common leach field and storage area."

2

¶ 5     In January 1980, the developer and the chairman of the Summit County Board of Commissioners (BOCC) signed an "Improvements Agreement" to ensure phased construction of utility improvements to support future development on Lots 1 through 10, which would be known as "French Creek Center, Phase I."  The Improvements Agreement did not mention Lot 11 or 12.

¶ 6     Later that year, the BOCC approved and recorded the final subdivision plat, which is partially shown below.  The final plat largely resembled the proposed plat, but unlike the proposed plat, the description underneath Lot 11's acreage just read "Open," and "n/a" was written in the project data table cell for the floor space allocated to Lots 11 and 12:



**PROJECT DATA**

| PARCEL NO. | AREA | FLOOR SPACE | |
|---|---|---|---|
| 1 | .28 ac. | 4000 | sq ft |
| 2 | .33 ac. | 4000 | |
| 3 | .41 ac. | 5000 | |
| 4 | .51 ac. | 5000 | |
| 5 | .39 ac. | 4000 | sq ft |
| 6 | .24 ac. | 2400 | |
| 7 | .32 ac. | 3500 | |
| 8 | .27 ac. | 5000 | |
| 9 | .21 ac. | 5000 | sq ft |
| 10 | .26 ac. | 6000 | |
| 11 & 12 | .79 ac. | n/a | |
| Total | 4.01 ac. | 43900 | sq ft |

*Final Subdivision Plat Detail for Lot 11*

¶ 7     Lot 11 remained undeveloped for forty years.  In 2021, RH Mining purchased it.

## B.     Procedural History

¶ 8     In September 2022, RH Mining applied to the Summit County Planning Department (Planning Department) for a permit to install a 900-square-foot portable storage unit on Lot 11.  The Planning Department denied the application because Lot 11 was platted as an "open space parcel with no assigned density [and] [w]hen the lot was platted, it was created as an open space parcel per the French Creek Center Sub Plat."  Because it was a platted open space parcel with no density assigned, the Planning Department concluded that "no structure can be built on the site."

¶ 9     RH Mining claimed that the denial improperly labeled Lot 11 as "open space" when the parcel was just labeled "open," so the Planning Department reconsidered its permit denial.  It denied the permit application again, but on different grounds and stated the following:

> It has been determined that the plat for Lot 11, French Creek Center Sub would not allow for any structures to be built on this lot regardless of whether the structure in question would count as floor area for the purposes of density.

4

> During the platting of this lot, it was discussed that this lot may be able to be used as a common parking area for the other lots in Lot 11 but otherwise should remain open, per the plat for the French Creek Center Sub.

¶ 10  RH Mining appealed this denial to the BOA, which held a hearing on the matter. Following the hearing, the BOA unanimously voted to affirm the Planning Department's decision for the following reasons: (1) staff interpreted "open" to mean "free from structures"; (2) the developer did not allocate any floor space to Lots 11 and 12; (3) the combined acreage of Lots 11 and 12 was 19.7% of the total acreage of the subdivision, which was the same percentage of land within the subdivision allocated as common open area; and (4) the developer did not list Lots 11 and 12 as intended for development in Phase I of the Improvements Agreement.

¶ 11  The BOA then adopted Resolution No. 2023-05, which made two findings:

> 1. The use of the word "open" and the lack of allocated floor area on the plat, combined with the description in the materials from the preliminary and final platting process that Lot 11 would be used for parking and snow storage,

supported the Code Administrator's determination that no structures should be allowed on the property.

2.   There is a process in the Summit County Land Use and Development Code (Code) by which the applicant could request additional density and/or uses for the property, and the BOA appeal process is not a substitute for the proper procedure.

¶ 12   RH Mining filed a complaint for judicial review of the BOA's decision under C.R.C.P. 106(a)(4).  RH Mining contended that the words "open" and "n/a" signaled that "at the time of the [plat's] approval, it was unclear how Lot 11 would be developed in the future and thus remained 'open,'" and therefore the plat does not prohibit structures or density on Lot 11.  RH Mining did not discuss the Building Setback Line.

¶ 13   In its opening brief, RH Mining asserted: (1) that the BOA applied an incorrect framework by not referencing the Code when interpreting the plat; (2) that the BOA abused its discretion by failing to resolve any ambiguity in the plat; and (3) that because the plat was ambiguous, the BOA was required to adjudicate the application consistent with the Code.  Again, it did not raise the

issue of the Building Setback Line. The BOA's answer brief also did not raise arguments relating to the Building Setback Line The district court granted RH Mining a seven-day extension to file its reply brief, which was eventually timely filed.

¶ 14 Two days later, however, with no leave from the court or conferral with the BOA, RH Mining filed an amended reply brief containing arguments related to the Building Setback Line. The BOA moved to strike the amended reply brief or, in the alternative, for leave to file a surreply brief. RH Mining filed a response to the motion, and the BOA filed its reply.

¶ 15 The district court granted the BOA's motion to strike RH Mining's argument concerning the Building Setback Line, concluding that it presented a new argument not raised in the opening brief. The court also affirmed Resolution No. 2023-05 and held (1) the plat unambiguously prohibits any structures from being built on Lot 11; and (2) assuming that the plat was ambiguous, extraneous evidence showed that the plat intended for no structures to be built on Lot 11.

¶ 16 RH Mining appeals.

## II. Discussion

¶ 17    RH Mining contends that the district court erred by (1) striking all information concerning the Building Setback Line and concluding that RH Mining waived this argument; (2) concluding the plat unambiguously prohibited structures from being built on Lot 11; and (3) concluding that extraneous evidence showed the plat intended for no structures to be built on Lot 11.[1] We disagree with these contentions and address each in turn.

### A. The District Court Did Not Err by Partially Granting the BOA's Motion to Strike

¶ 18    RH Mining contends that the district court erroneously struck part of RH Mining's amended reply brief, which waived all information pertaining to the Building Setback Line from the record and precluded RH Mining from making an argument based on it. We disagree.

---

[1] RH Mining's opening brief does not comply with C.A.R. 28(a)(7)(A), which requires citation to the record and for the appellant to indicate whether the issues raised were preserved on appeal. We decline to impose sanctions under C.A.R. 38(a) but remind counsel of the obligation litigants have to comply with the rules. *See Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006) (recognizing that it is the litigant's duty to locate and synthesize relevant facts and arguments, and this duty should not be given to the appellate court).

¶ 19     "We review a district court's decision to accept or reject a brief for an abuse of discretion." *Migoya v. Wheeler*, 2024 COA 124, ¶ 23.  A district court abuses its discretion only "if its decision is manifestly unreasonable, arbitrary, or unfair, or it misapplies the law." *HMLL LLC v. MJM Holdings Ltd.*, 2024 COA 85, ¶ 17.

¶ 20     Generally, a court will not consider arguments raised for the first time in a reply brief.  *See IBC Denver II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 718 (Colo. App. 2008).

¶ 21     RH Mining maintains that by striking the Building Setback Line argument in its amended reply brief, the district court "deliberately ignored a portion of the record" when conducting its judicial review.  This is inaccurate.  By partially granting the BOA's motion to strike, the district court did not "waive part of the record"; rather it waived RH Mining's ability to raise a Building Setback Line-related argument for the first time in a reply brief.

¶ 22     By waiting to raise the argument until it filed its amended (and untimely) reply brief in the district court, RH Mining denied the BOA the opportunity to consider and respond to that argument at the administrative level and the district court level.  *See, e.g., Widder v. Durango Sch. Dist. No. 9-R*, 85 P.3d 518, 526 (Colo. 2004)

(recognizing that judicial review under C.R.C.P. 106(a)(4) "contemplates that the district court will review the record of the proceedings conducted elsewhere" and "[will] not contemplate a new evidentiary hearing at the district court level"); *In re Marriage of Drexler*, 2013 COA 43, ¶ 27 (arguments raised for the first time in a reply brief are not considered for appellate review).

¶ 23    We conclude that the court did not abuse its discretion by partially granting the BOA's motion to strike RH Mining's amended reply brief.

### B.    Review of the BOA's Administrative Decision Under C.R.C.P. 106(a)(4)

¶ 24    RH Mining contends that the BOA erred by denying RH Mining's appeal and affirming the Planning Department's determination.  Again, we disagree.

#### 1.    Standard of Review and Applicable Law

¶ 25    Our review under C.R.C.P. 106(a)(4) is limited to "a determination of whether the [governmental] body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." C.R.C.P. 106(a)(4)(I).  The appropriate consideration for an appellate

court is whether there is sufficient evidentiary support for the decision reached by the administrative tribunal, not whether there is adequate evidentiary support for the lower court's decision. *See City of Colorado Springs v. Givan*, 897 P.2d 753, 756 (Colo. 1995). Therefore, an appellate court is in the same position as the district court when reviewing a decision under Rule 106(a)(4). *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 376 (Colo. 2000).

¶ 26    In conducting our review, we apply a deferential standard and "we may not disturb the governmental body's decision absent a clear abuse of discretion." *Langer v. Bd. of Comm'rs*, 2020 CO 31, ¶ 13. "A governmental entity abuses its discretion only when it applies an erroneous legal standard or when no competent evidence in the record supports its ultimate decision." *Id.* We will only reach this conclusion if the BOA's decision was "so devoid of evidentiary support" that the decision was arbitrary and capricious. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 900 (Colo. 2008).

¶ 27    But when the decision involves the interpretation of recorded instruments, we review it de novo. *See Ad Two*, 9 P.3d at 376; *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 23. "In

11

doing so, we give words and phrases their common meanings and will enforce such documents as written if their meaning is clear." *Pulte*, ¶ 23. We only consider extraneous evidence to prove intent when the meaning of a term is unclear or ambiguous on its face. *Ad Two*, 9 P.3d at 376. A term is ambiguous if it has more than one reasonable interpretation. *Id.* Mere differences in opinion between parties over how to interpret the instrument does not create an ambiguity. *Id.*

## 2. Analysis

### a. The Plat Unambiguously Prohibits Any Structures from Being Built on Lot 11

¶ 28 RH Mining contends that the terms of the plat were ambiguous and that the plat was subject to multiple reasonable interpretations. We disagree.

¶ 29 The plat identifies all twelve parcels, their perimeters, and their respective acreage. Notably, Lots 1 through 10 do not contain any words under their acreage, while Lots 11 and 12 do. Lot 11 is labeled "open" and the words "leach field" and "snowstack" appear on Lot 12. The plat also contains a project data table that identifies each parcel, its area, and its floor space. Lots 1 through 10 are

12

assigned floor space, but Lots 11 and 12 have no floor space. Instead, the term "n/a" is written in their floor space cell.

¶ 30 The plat does not define what the terms "open," "floor space," or "n/a" mean, so we look to their plain meanings. *See Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n,* 2019 CO 5, ¶ 13 (in determining whether certain terms of an instrument are ambiguous, "[w]e may consult with definitions in recognized dictionaries to give undefined words their plain and generally accepted meaning").

¶ 31 The word "open" has several definitions, including "having no enclosing or confining barrier"; "completely free from concealment: exposed to general view or knowledge"; "not restricted to a particular group or category of participants"; and "presenting no obstacle to passage or view: not enclosed, obstructed, or filled with objects." Merriam-Webster Dictionary, https://perma.cc/SK55-6DNT.

¶ 32 "Floor space" is defined as "the area of the floor of a building such as a shop, office, or factory." Cambridge Dictionary, https://perma.cc/ZJF5-SGMP.

¶ 33    "N/a" is an abbreviation for several terms, including "not

applicable" and "not available."  Merriam-Webster Dictionary,

https://perma.cc/HH3H-2SRL.

¶ 34    Giving the words defined above their common meaning, we

conclude that "open" as used in the plat means "having no

enclosing or confining barrier" and "presenting no obstacle to

passage or view: not enclosed, obstructed, or filled with objects."

This is consistent with the way that the floor space for Lots 11 and

12 was marked "n/a" to mean no square footage was allocated for a

building or structure on these two parcels.  *See, e.g., Premier Farm

Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 517 (Colo. App. 2006)

(recognizing that the written document's "language must be

examined and construed in harmony with the plain and generally

accepted meaning of the words used, and reference must be made

to all the agreement's provisions" (quoting *Fibreglas Fabricators, Inc.

v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990))).

¶ 35    RH Mining argues that if there was no intent to allow

structures on Lot 11, it would be unnecessary for the plat to

include a Building Setback Line on Lot 11 and including a setback

renders the plat ambiguous.  In support, RH Mining cites Section

3505.13 of the Code, which defines a setback as "an undeveloped open area of fixed width within a parcel along the front, side or rear property line which shall remain free of any development and no building, structural improvement or paving is to be placed in any required setback except as provided in Section 3505.13.F. and G." By including setbacks on Lot 11, RH Mining contends that buildings are allowed on Lot 11 as long as they are not located within the setbacks.

¶ 36     RH Mining's contention is misplaced. All the parcels have building setbacks — not just Lot 11. What distinguishes Lot 11 is that, in addition to a setback, which is intended to be an undeveloped area along the parcel's perimeter, Lot 11 has the word "open," which we have already indicated means "presenting no obstacle to passage or view." Unlike Lots 1 through 10, which permit structures to be erected — except within the setback areas — no structures were intended for placement inside or outside of Lot 11's Building Setback Line. Thus, even applying the Code's definition of a setback, there is no ambiguity or conflict with the conclusion that no buildings were intended on Lot 11.

b.    Extraneous Evidence Supports the BOA's Finding that the Plat Intended for No Structures to Be Built on Lot 11

¶ 37    Even if the plat is ambiguous, the following extraneous evidence supports the BOA's conclusion that no structures were intended to be built on Lot 11:

- At the regional planning commission meeting in 1979, the former planning director explained that "the concept [wa]s to develop parking on Lot 11 for Lots 7, 8, 9, & 10."

- The final proposed project description allocated 19.7% of the subdivision as "common open area to accommodate the channel of French Creek, common parking and a common leach field and storage area."  The combined acreage of Lots 11 and 12, which is calculated in the project data table on the plat, totals 0.79 acres — roughly 19.7% of the subdivision's 4.01 acres.  Nothing in the record indicates that the Planning Department changed this designation.

- The developer and BOCC chairman signed an Improvements Agreement to construct utilities and improvements on the subdivision.  The agreement

16

included Lots 1 through 10 but did not mention Lot 11 or 12.

¶ 38    Having considered this extraneous information, we conclude that the BOA did not err in finding that no structures can be built on Lot 11.

## III.    Disposition

¶ 39    Accordingly, we affirm the district court's judgment granting the BOA's motion to strike the Building Setback Line argument from RH Mining's amended reply brief and affirming Resolution No. 2023-05.

JUDGE FREYRE and JUDGE GOMEZ concur.